**CONFORMED**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Bruce E. Van Dalsem (Bar No. 124128)
  (brucevandalsem@quinnemanuel.com)
  Yonaton M. Rosenzweig (Bar No. 248137)
  (yonirosenzweig@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiffs
Alliance Atlantis Releasing Limited,
dba Momentum Pictures, Aurum
Producciones S.A., Alliance Films Inc.,

FILED
2009 MAR -9  PM 12: 11
CLERK US DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALLIANCE ATLANTIS RELEASING LIMITED, an England and Wales corporation, dba MOMENTUM PICTURES, AURUM PRODUCCIONES S.A., a Spain corporation, and ALLIANCE FILMS INC., a Canada corporation,<br><br>Plaintiff,<br><br>v.<br><br>BOB YARI PRODUCTIONS, a California corporation; and DOES 1-10,<br><br>Defendants. | CASE NO.<br><br>**CV09-1618 MMM AJWx**<br><br>COMPLAINT FOR:<br><br>BREACH OF CONTRACT; and<br><br>DECLARATORY RELIEF<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Alliance Atlantis Releasing Limited, doing business as

Momentum Pictures (hereinafter "Momentum"), Aurum Producciones S.A.

(hereinafter "Aurum") and Alliance Films Inc. (hereinafter "Alliance Films")

(collectively referred to as "Plaintiffs") allege as follows:

## NATURE OF THE ACTION

1.     This is an action for breach of five (5) written contracts pursuant

to which Defendant Bob Yari Productions ("BYP") promised Plaintiffs that it would

22016/2791752.2

1  repay over $5,700,000 in the event that it failed to distribute two motion pictures
2  theatrically in the United States on a certain minimum number of screens.  The two
3  films at issue are "Addicted" starring Sarah Michelle Gellar and "Accidental
4  Husband," starring Uma Thurman ("Husband") (collectively "the Films").
5  Plaintiffs, as international distributors, each paid substantial distribution advances to
6  BYP upon delivery of the Films (the "Minimum Guarantees").  BYP, as producer,
7  promised that the Films would receive wide distribution theatrically in the dominant
8  American market.  Despite these assurances, BYP has not distributed Addicted or
9  Husband theatrically in the United States.  As a result, Plaintiff exercised its rights
10  under the relevant contracts to return their distribution rights for each film.  As such,
11  Defendant is required to fulfill its promises and repay the Minimum Guarantees paid
12  by Plaintiffs, plus the contractually-set interest rate and other distribution expenses,
13  in consideration for the return of those rights.

14

15  **Jurisdiction and Venue**

16

17      2.  This Court has diversity jurisdiction pursuant to 28 U.S.C.
18  § 1332(a)(1) in that the amount in controversy in this action exceeds $75,000,
19  exclusive of interest and costs, and because there is complete diversity in that
20  Plaintiff does not reside in any state where a Defendant resides.  This action is also
21  brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

22      3.  Venue is proper in this District pursuant to 28 U.S.C.
23  §§ 1391(b)(2) and 1391(c) because (a) all Defendants reside in this judicial District,
24  (b) a substantial portion of the events giving rise to the claim occurred in this
25  district, and (c) the Defendants are subject to personal jurisdiction in this District.

26      4.  Personal jurisdiction over Defendants is proper in that
27  Defendants reside or do business within the State of California.

28

22016/2791752.2

-2-
COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

## THE PARTIES

5.      Plaintiff Alliance Atlantis Releasing Limited is a film distributor incorporated under the laws of England and Wales which does business as Momentum Pictures (hereinafter "Momentum").

6.      Plaintiff Aurum Producciones S.A. is a film distributor incorporated under the laws of Spain (hereinafter "Aurum").

7.      Plaintiff Alliance Films Inc. is a film distributor incorporated under the laws of Canada (hereinafter "Alliance Films").  During the time relevant to the allegations in this Complaint, Alliance Films was known as "Motion Picture Distribution LP."

8.      Defendant Bob Yari Productions (sometimes hereinafter "BYP") is a motion picture production and finance company incorporated under the laws of the State of California, with its principal place of business in Los Angeles County. BYP frequently enters into contracts for domestic distribution and oversees the same.

9.      The Defendants sued herein as Does 1-10 are persons and entities unknown to Plaintiffs at this time whose acts or omissions are responsible in whole or in part for the harm suffered by Plaintiffs as alleged herein.  Plaintiffs will amend this Complaint to add the true names and capacities of the fictitiously-named Defendants when the same has been ascertained.

# FACTS COMMON TO ALL CLAIMS

## I.   BYP'S FAILURE TO DISTRIBUTE ADDICTED IN THE UNITED STATES AND BREACH OF LETTER AGREEMENTS

### A.   The Addicted Distribution Agreements

10.   Defendant Bob Yari Productions is in the business of producing, financing, and distributing motion pictures.  Film companies such as BYP often employ "single purpose entities" for the purpose of producing a film.  Such was the structure employed by BYP when, in 2006, Bob Yari produced the suspense film "Addicted" (sometimes referred to as "Possession") starring Sarah Michelle Gellar. Specifically, BYP caused the formation of an affiliate known as Addicted Distribution, LLC ("AD, LLC") for the purpose of producing and distributing "Addicted."

11.   Momentum, Aurum, and Alliance Films ("Plaintiffs" or "Distributors") are affiliated companies in the business of distributing motion pictures internationally in their respective territories.  Plaintiffs each entered into separate licensing agreements for Addicted dated between October 5, 2006 and November 10, 2006, wherein rights to Addicted were licensed to Plaintiffs, and each of them, to distribute in each one's separate territory (collectively, "the Addicted Distribution Agreements," or, separately "the Momentum Addicted Distribution Agreement," "the Aurum Addicted Distribution Agreement," and "the Alliance Films Addicted Distribution Agreement").

12.   AD, LLC entered into two of these distribution agreements -- the Momentum Addicted Distribution Agreement and the Alliance Films Addicted Distribution Agreement -- through a sales agent named Syndicate Films International, LLC, another BYP-affiliate.

13.   With respect to the Aurum Addicted Distribution Agreement, AD, LLC licensed its Spanish distribution rights in Addicted to a Hungarian

22016/2791752.2

-4-

1 corporation named Fintage Magyar, Kft. ("Fintage"). Fintage executed the Aurum
2 Addicted Distribution Agreement with Aurum. AD, LLC and/or another BYP-
3 affiliate will assume Fintage's obligations under the Aurum Addicted Distribution
4 Agreement and will be assigned the rights and benefits of Fintage under the Aurum
5 Addicted Distribution Agreement.

6         14.   Pursuant to the Addicted Distribution Agreements, each Plaintiff
7 obtained the rights to distribute Addicted in their respective territories: Momentum
8 gained the right to distribute Addicted in the United Kingdom and related territories;
9 Aurum gained the right to distribute Addicted in Spain and related territories; and
10 Alliance Films gained the right to distribute Addicted in Canada. Each Plaintiff
11 agreed to pay defined Gross Receipts generated by distribution, less distribution fees
12 and expenses. Each Plaintiff further agreed in the Addicted Distribution
13 Agreements that, subject to the satisfaction of certain conditions, they would pay a
14 "Minimum Guarantee" prior to their distribution of the film. In other words,
15 regardless of the revenue actually generated by distributing "Addicted" in their
16 respective territories, Plaintiffs agreed that AD, LLC's share thereof would be not
17 less than the Minimum Guarantee. The contractual Minimum Guarantee for
18 Momentum on Addicted was $1,400,000; the contractual Minimum Guarantee for
19 Aurum on Addicted was $817,911; the contractual Minimum Guarantee for Alliance
20 Films on Addicted was $846,819.

21         15.   The Addicted Distribution Agreements each contained an
22 express material condition requiring that AD, LLC would ensure U.S. theatrical
23 distribution. By their express terms, the Addicted Distribution Agreements provide
24 that the agreements could be terminated in the event that the film was not distributed
25 theatrically in the United States or if BYP could not provide notice thereof.

26
27
28

22016/2791752.2

-5-

1

          **B.**     **The Assignment Of The Minimum Guarantees To The Banks**

2         16.    In order for AD, LLC and Bob Yari Productions to pay the costs

3 of producing "Addicted," they sought one or more bank loans.  To that end, AD,

4 LLC and Fintage entered into loan and completion guarantee agreements with ICB

5 Entertainment, Inc., a division of Imperial Capital Bank ("ICB Entertainment"), and

6 Film Finances, Inc.

7         17.    In order to provide security to ICB Entertainment, the Addicted

8 Minimum Guarantees were assigned to ICB Entertainment in three separate

9 agreements entitled "Notice and Acceptance of Assignment" (collectively "the

10 Addicted Assignments," individually "the Momentum Addicted Assignment," "the

11 Aurum Addicted Assignment," and the "Alliance Films Addicted Assignment")

12 dated November 10, 2006, October 5, 2006, and October 25, 2006.  Pursuant to the

13 Addicted Assignments, Plaintiffs were obligated to pay the Minimum Guarantees to

14 ICB Entertainment upon satisfaction of certain delivery conditions.  ICB

15 Entertainment made loans to BYP or an affiliate thereof in order to fund production

16 of "Addicted."

17          **C.**     **The Letter Agreements Between Plaintiffs**

18               **And Bob Yari Productions**

19       18.    As alleged, the Addicted Distribution Agreements provide that

20 the agreements could be terminated in the event that "Addicted" was not distributed

21 theatrically in the United States.  Because these agreements were made with a

22 single-purpose entity, and in order to further protect their significant investments in

23 the form of the Minimum Guarantees, Plaintiffs entered into three Letter

24 Agreements with BYP as material inducements to the Addicted Distribution

25 Agreements:

26         (a)    The Momentum-BYP Letter Agreement dated November 13,

27              2006 (hereinafter "Momentum Addicted Letter Agreement").

28              (Attached hereto as Exhibit A.)

-6-

     (b)    The Aurum-BYP Letter Agreement dated October 25, 2006 (hereinafter "Aurum Addicted Letter Agreement"). (Attached hereto as Exhibit B.)

     (c)    The Alliance Films-BYP Letter Agreement dated October 27, 2006 (hereinafter "Alliance Films Addicted Letter Agreement"). (Attached hereto as Exhibit C.)

19.    Pursuant to the Momentum Addicted Letter Agreement, Momentum has the right to "put" its Addicted distribution rights to BYP if BYP and its affiliates fail to ensure that Addicted is distributed in the U.S. theatrically on "no less than 700 screens" by certain approved studios on the earlier of (a) two years from completion of principal photography or (b) one year after Delivery. In the event Momentum elected to put its distribution rights to BYP, the Letter Agreement provides that within thirty (30) business days thereof, BYP is required to repay to Momentum the Minimum Guarantee together with interest at the rate of LIBOR plus 2%, as well all other amounts paid by Momentum in respect of the film Addicted, such other amounts not to exceed $500,000.

20.    Pursuant to the Aurum Addicted Letter Agreement, Aurum has the right to "put" its Addicted distribution rights to BYP if BYP or its affiliates fail to ensure that Addicted is distributed in the U.S. theatrically on "no less than 700 screens" by certain approved studios on the earlier of (a) two years from completion of principal photography or (b) one year after Delivery. In the event Aurum elected to put its distribution rights to BYP, the Letter Agreement provides that within thirty (30) business days thereof, BYP is required to repay to Aurum the Minimum Guarantee together with interest at the rate of LIBOR plus 2%, as well all other amounts paid by Aurum in respect of the film Addicted, such other amounts not to exceed $500,000.

21.    Pursuant to the Alliance Films Addicted Letter Agreement, BYP was required to serve written notices to Alliance Films confirming whether or not

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Addicted would meet the "theatrical release commitment," that is, the commitment to distribute "Addicted" in the U.S. on "no less than 700 screens" by certain approved studios.  The Letter Agreement provides that, in the event that BYP serves a notice which confirms that the U.S. theatrical release commitment will *not* be satisfied, then Alliance Films has the right to "put" its Addicted distribution rights to BYP.  The Letter Agreement further provides that, regardless of the notices provided by BYP, in the event that BYP and its affiliates fail to secure distribution of the Film in the Unites States on no fewer than 700 screens, then Alliance Films has the right to "put" its Addicted distribution rights to BYP.  In the event of a "put", BYP is required to repay to Alliance Films the Minimum Guarantee together with interest at the rate of LIBOR plus 2%, as well all other distribution expenses paid by Alliance Films in respect of the film, such other amounts not to exceed $500,000.

22.     According to each of the Addicted Letter Agreements, the return of the Minimum Guarantees (plus interest and distribution expenses) must be paid by BYP "in consideration for" the "put" and the assignment of distribution rights thereunder.

**D.     Plaintiffs' Payment Of The Minimum Guarantees and BYP's Failure to Distribute in the U.S.**

23.     After receiving the required delivery-related materials related to Addicted, Plaintiffs paid ICB Entertainment the required sums, as follows:

(a)     Momentum paid ICB Entertainment the sum of $1,330,000, constituting the 95% payment of the Minimum Guarantee required at that time under the Momentum Addicted Distribution Agreement and the Momentum Addicted Assignment, directing BYP to pay the remaining portion of the Minimum Guarantee to its bank.

(b)     Aurum paid ICB Entertainment the sum of $777,015 constituting the 95% payment of the Minimum Guarantee

1    required at that time under the Aurum Addicted Distribution
2    Agreement and the Aurum Addicted Assignment, directing
3    BYP to pay the remaining portion of the Minimum Guarantee
4    to its bank.

5    (c)    Alliance Films paid ICB Entertainment the sum of $846,819,
6    constituting the 100% payment of the Minimum Guarantee
7    required at that time under the Alliance Films Addicted
8    Distribution Agreement and the Alliance Films Addicted
9    Assignment.

10    24.    Principal photography for Addicted completed in December
11   2006. Despite the passages of two (2) years, neither BYP nor an affiliate thereof
12   can provide Plaintiffs with evidence of a U.S. theatrical release of Addicted on no
13   less than 700 screens. In fact, Addicted has never been distributed theatrically in the
14   United States on any screens and BYP plans no commercial theatrical release.

15    25.    Taken together, the notices provided by BYP and its affiliates to
16   Alliance Films under the Alliance Films Addicted Letter Agreement confirmed that
17   BYP would not meet its theatrical release commitment under the Letter Agreement.

18    **E.    Plaintiffs Serve Put Notices And Seek to Assign Addicted**
19    **Distribution Rights To BYP**

20    26.    None of the Plaintiffs has engaged in a "Prior Release" (as
21   defined in the Addicted Letter Agreements) of "Addicted."

22    27.    On January 9, 2009, Plaintiffs sent three notices exercising their
23   respective rights under the Letter Agreements to put to BYP their distribution rights
24   for Addicted in their respective territories (the "Addicted Put Notices"). These Put
25   Notices demanded that BYP repay the Minimum Guarantees, plus interest at the rate
26   provided in the Addicted Letter Agreements, plus other distribution outlays as
27   follows:

28

1      (a)   Momentum served a Put Notice requiring BYP to repay

2           $1,369,773.53, consisting of the Minimum Guarantee payment to

3           ICB Entertainment of $1,330,000, interest thereon of $34,926,

4           and distribution expenses of $4,847.53 (hereinafter the

5           "Momentum Addicted Put Notice"). (Attached hereto as

6           Exhibit D.)

7      (b)   Aurum served a Put Notice requiring BYP to repay $790,826.85

8           and €812.42, consisting of the Minimum Guarantee payment to

9           ICB Entertainment of $777,015, interest thereon of $13,511.85,

10          and distribution expenses of €812.42 (hereinafter the "Aurum

11          Addicted Put Notice"). (Attached hereto as Exhibit E.)

12     (c)   Alliance Films served a Put Notice requiring BYP to repay

13          $867,125 and CDN$12,341, consisting of the Minimum

14          Guarantee payment to ICB Entertainment of $846,819, interest

15          thereon of $20,306, and distribution expenses of CDN$12,341

16          (hereinafter the "Alliance Films Addicted Put Notice").

17          (Attached hereto as Exhibit F.)

18    28.   Along with the Put Notices, Plaintiffs issued invoices to BYP for

19 the amounts demanded, true and correct copies of which are attached to each of

20 Exhibits D, E, and F.

21    29.   BYP has failed and refused to repay the amounts demanded in

22 the Put Notices and attached invoices.

23    **F.**   **Other Breaches**

24    30.   BYP has breached other provisions of the Addicted Letter

25 Agreements.  BYP failed to engage in Good Faith Negotiations as required under

26 paragraph (II) of the Momentum Addicted Letter Agreement, paragraph (II) of the

27 Aurum Addicted Letter Agreement, and paragraphs A.(II) and B.(II) of the Alliance

28 Films Addicted Letter Agreement.

1        31.    BYP has failed to provide Plaintiffs with "updated financial

2    information regarding BYP" as required by each of the Addicted Letter Agreements.

3

4    **II.    BYP'S FAILURE TO DISTRIBUTE ACCIDENTAL HUSBAND IN**

5            **THE UNITED STATES AND BREACH OF LETTER AGREEMENTS**

6            **A.    The Husband Distribution Agreements**

7        32.    BYP employed another "single purpose entity" for the purpose of

8    producing and licensing the 2006 romantic comedy Accidental Husband (sometimes

9    hereinafter "Husband") starring Uma Thurman.  Specifically, BYP caused the

10   formation of an affiliate known as Accidental Husband Intermediary, Inc. ("AHI,

11   Inc.") for the purpose of producing and distributing "Husband."

12       33.    Alliance Films·and Aurum entered into distribution agreements

13   relating to the film "Husband" dated November 2, 2006 and October 31, 2006

14   respectively, wherein rights to "Husband" were licensed to Alliance Films and

15   Aurum from AHI, Inc. to distribute the film in their respective territories

16   (collectively "the Husband Distribution Agreement" or separately "the Alliance

17   Films Husband Distribution Agreement" and "the Aurum Husband Distribution

18   Agreement").

19       34.    With respect to the Alliance Films Husband Distribution

20   Agreement, AHI, Inc. entered into the agreement through a sales agent named

21   Syndicate Films International, LLC, another BYP-affiliate.

22       35.    With respect to the Aurum Husband Distribution Agreement,

23   AHI, Inc. licensed its Spanish distribution rights in "Husband" to Fintage Magyar,

24   Kft. ("Fintage"), which executed the Aurum Husband Distribution Agreement with

25   Aurum.  AHI, Inc. or another affiliate of BYP will assume Fintage's obligations

26   under the Aurum Husband Distribution Agreement and will be assigned the rights of

27   Fintage under the Aurum Husband Distribution Agreement.

28

36.     Pursuant to the Husband Distribution Agreements, Aurum and Alliance Films each obtained the rights to distribute "Husband" in their respective territories:  Aurum gained the right to distribute "Husband" in Spain and related territories and Alliance Films gained the right to distribute "Husband" in Canada. Aurum and Alliance Films each agreed to pay defined Gross Receipts generated by distribution, less distribution fees and expenses.  Each Plaintiff further agreed that, subject to the satisfaction of certain conditions, they would pay a "Minimum Guarantee" prior to their distribution of the film.  In other words, regardless of the revenue actually generated by distributing "Husband" in their respective territories, Plaintiffs agreed that AHI, Inc.'s share thereof would be not less than the Minimum Guarantee.  The contractual Minimum Guarantee for Aurum on "Husband" was $1,411,385; the contractual Minimum Guarantee for Alliance Films on "Husband" was also $1,411,385.

37.     The Husband Distribution Agreements each contained an express material condition requiring that AHI, Inc. would ensure U.S. theatrical distribution. By their express terms, the Husband Distribution Agreements provide that they could be terminated in the event that the film was not distributed theatrically in the United States.

**B.      The Assignment Of The Minimum Guarantees To The Banks**

38.     In order for AHI, Inc. and Bob Yari Productions to pay the costs of producing the film "Husband," they sought one more bank loans.  To that end, AHI, Inc. and Fintage entered into loan and completion guarantee agreements with The Governor and Company of the Bank of Ireland ("the Bank of Ireland") and two completion guarantors.

39.     In order to provide security to the Bank of Ireland, the Husband Minimum Guarantees were assigned to the Bank of Ireland in two separate agreements entitled "Notice and Acceptance of Assignment" (collectively "the Husband Assignments," individually "the Aurum Husband Assignment" and the

1   "Alliance Films Husband Assignment") dated October 31, 2006 and December 16,
2   2006.  Pursuant to the Husband Assignments, Plaintiffs were obligated to pay the
3   Husband Minimum Guarantees to the Bank of Ireland upon satisfaction of certain
4   delivery conditions.  The Bank of Ireland made loans to BYP or an affiliate thereof
5   in order to fund production of "Husband."

6           **C.     The Letter Agreements Between Plaintiffs**
7                    **And Bob Yari Productions**

8           40.     As alleged, the Husband Distribution Agreements provide that
9   the agreements could be terminated in the event that "Husband" was not distributed
10  theatrically in the United States on a certain number of screens.  Because these
11  agreements were not made with a company with substantial assets, and in order to
12  further protect their significant investments in the form of the Minimum Guarantees,
13  Aurum and Alliance Films entered into two Letter Agreements with BYP as
14  material inducements to the Husband Distribution Agreements:

15          (a)     The Aurum-BYP Letter Agreement dated December 14, 2006
16                  (hereinafter "Aurum Husband Letter Agreement").  (Attached
17                  hereto as Exhibit G.)

18          (b)     The Alliance Films-BYP Letter Agreement dated December 14,
19                  2006.  (hereinafter "Alliance Films Husband Letter Agreement")
20                  (Attached hereto as Exhibit H.)

21          41.     Pursuant to the Aurum Husband Letter Agreement, Aurum has
22  the right to "put" its "Husband" distribution rights to BYP if BYP or its affiliates fail
23  to ensure that "Husband" is distributed in the U.S. theatrically on "no less than 1000
24  screens" by certain approved studios on the earlier of (a) two years from completion
25  of principal photography or (b) one year after Delivery.  In the event Aurum elected
26  to put its distribution rights to BYP, the Letter Agreement provides that within thirty
27  (30) business days thereof, BYP is required to repay to Aurum the Minimum
28  Guarantee together with interest at the rate of LIBOR plus 2%, as well all other

1  amounts paid by Aurum in respect of the film "Husband", such other amounts not to
2  exceed $500,000.

3          42.    Pursuant to the Alliance Films Husband Letter Agreement, BYP
4  was required to serve written notices to Alliance Films confirming whether
5  "Husband" would meet the "theatrical release commitment," that is, the commitment
6  to distribute "Husband" in the U.S. on "no less than 1000 screens" by certain
7  approved studios.  The Letter Agreement provides that, in the event that BYP serves
8  a notice which confirms that the U.S. theatrical release commitment will *not* be
9  satisfied, then Alliance Films has the right to "put" its "Husband" distribution rights
10  to BYP.  The Letter Agreement further provided that, regardless of the notices
11  provided by BYP, in the event that BYP and its affiliates fail to secure distribution
12  of the Film in the Unites States on no fewer than 1000 screens, then Alliance Films
13  has the right to "put" its "Husband" distribution rights to BYP.  In the event of a
14  "put," BYP is required to repay to Alliance Films the Minimum Guarantee together
15  with interest at the rate of LIBOR plus 2%, as well all other distribution expenses
16  paid by Alliance Films in respect of the film, such other amounts not to exceed
17  $500,000.

18          43.    According to each of the Husband Letter Agreements, the return
19  of the Minimum Guarantees (plus interest and distribution expenses) must be paid
20  by BYP "in consideration for" the "put" and the assignment of distribution rights
21  thereunder.

22          **D.**    **Plaintiffs' Payment Of The Minimum Guarantees and**
23          **BYP's Repudiation and Breach of its Obligation to Distribute**
24          **Husband in the U.S.**

25          44.    After receiving the required delivery-related materials from AHI,
26  Inc. related to "Husband," Aurum and Alliance Films paid the Bank of Ireland the
27  required sums, as follows:

28

(a)     Aurum paid the Bank of Ireland the sum of $1,340,816 constituting the 95% payment of the Minimum Guarantee required at that time under the Aurum Husband Distribution Agreement and the Aurum Husband Assignment.

(b)     Alliance Films paid the Bank of Ireland the sum of $1,411,385 constituting the full payment of the Minimum Guarantee required at that time under the Alliance Films Husband Distribution Agreement and the Alliance Films Husband Assignment.

45.     On January 9, 2009, Aurum and Alliance Films sent two letters demanding from BYP adequate assurances of performance under the Husband Letter Agreements. (Attached hereto as Exhibits I and J.) Said letters demanded that BYP affirm its promise to timely release "Husband" on no less than 1000 screens in the U.S. by an approved distributor. BYP failed to respond to the letters with the requested information and thereby repudiated its obligations under the Husband Letter Agreements.

46.     Principal photography for Accidental Husband completed in March 2006. Notwithstanding the passage of two years, Accidental Husband has never been distributed theatrically in the United States on any screens. Neither BYP nor an affiliate thereof can provide Aurum or Alliance Films with evidence of a timely U.S. theatrical release on no less than 1000 screens by an approved distributor. On information and belief, the only currently scheduled release for Husband is in early May 2009 on video only by a division of Sony. Such a video release would be inconsistent in the motion picture business with a theatrical release at or near such time.

47.     The notices provided by BYP to Alliance Films under the Alliance Films Husband Letter Agreement confirmed that BYP would not meet its

1  theatrical release commitment under the Letter Agreement by an approved

2  distributor.

3       **E.   Plaintiffs Serve Put Notices And Seek to Assign Husband**

4            **Distribution Rights To BYP**

5            48.   As a result of said breaches, on February 23, 2009 Aurum and

6  Alliance Films sent BYP two "Put Notices" exercising their respective rights under

7  the Husband Letter Agreements to "put" to BYP the distribution rights for

8  "Husband" in their respective territories.  The Put Notices demanded that BYP repay

9  the Minimum Guarantees, plus interest at the rate provided in the Letter Agreement,

10  plus other distribution outlays as follows:

11            (a)   Aurum served a Put Notice requiring BYP to repay $1,367,353

12                  and €37,308 consisting of the Minimum Guarantee payment to

13                  Bank of Ireland of $1,340,816, interest thereon of $26,537, and

14                  distribution expenses of €37,308 (hereinafter the "Aurum

15                  Husband Put Notice"). (Attached hereto as Exhibit K.)

16            (b)   Alliance Films served a put notice requiring BYP to repay

17                  $1,448,786 and CND$39,513, consisting of the Minimum

18                  Guarantee payment to Bank of Ireland of $1,411,385, interest

19                  thereon of $37,401, and distribution expenses of CND$39,513

20                  (hereinafter the "Alliance Films Husband Put Notice"). (Attached

21                  hereto as Exhibit L.)

22            49.   The Aurum Put Notice further directed BYP to assume any

23  outstanding obligation to the Bank of Ireland under the Aurum Husband

24  Distribution Agreement and Aurum Husband Assignments.

25            50.   Plaintiffs issued invoices to BYP for the amounts demanded.

26            51.   Neither Aurum nor Alliance Films has engaged in a "Prior

27  Release" (as defined in the Husband Letter Agreements) of "Husband."

28

52.    BYP has failed and refused to repay the amounts demanded in the Husband Put Notices.

**F.    <u>Other Breaches</u>**

53.    BYP has breached other provisions of the Husband Letter Agreements.  BYP failed to engage in Good Faith Negotiations as required under paragraph (II) of the Aurum Husband Letter Agreement and paragraphs A.(II) and B.(II) of the Alliance Films Husband Letter Agreement.

54.    BYP has failed to provide distributor with "updated financial information regarding BYP" as required by the Husband Letter Agreements.

The following table summarizes the attached exhibits:

| Exhibit | Short Title | Date |
|---------|-------------|------|
| Exhibit A | Momentum Addicted Letter Agreement | November 13, 2006 |
| Exhibit B | Aurum Addicted Letter Agreement | October 25, 2006 |
| Exhibit C | Alliance Films Addicted Letter Agreement | October 27, 2006 |
| Exhibit D | Momentum Addicted Put Notice | January 9, 2009 |
| Exhibit E | Aurum Addicted Put Notice | January 9, 2009 |
| Exhibit F | Alliance Films Addicted Put Notice | January 9, 2009 |
| Exhibit G | Aurum Husband Letter Agreement | December 14, 2006 |
| Exhibit H | Alliance Films Husband Letter Agreement | December 14, 2006 |
| Exhibit I | Aurum Demand for Adequate Assurances | January 9, 2009 |
| Exhibit J | Alliance Demand for Adequate Assurances | January 9, 2009 |
| Exhibit K | Aurum Husband Put Notice | February 23, 2009 |
| Exhibit L | Alliance Films Husband Put Notice | February 23, 2009 |

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIRST CLAIM FOR RELIEF

(For Breach of Momentum Addicted Letter Agreement Against BYP and Does 1-10)

55.     Momentum hereby incorporates each and every allegation contained in Paragraphs 1 through 54 above.

56.     The Momentum Addicted Letter Agreement is a valid contract.

57.     Momentum has performed all obligations and satisfied all conditions required of it under the Momentum Addicted Letter Agreement, other than those promises and conditions the performance or satisfaction of which have been excused by operation of law, or the performance or satisfaction of which have been prevented by Defendants.

58.     Defendants have breached the Momentum Addicted Letter Agreement by failing to release Addicted on the requisite number of screens in the U.S., by failing to negotiate in good faith, and by refusing to pay to Momentum the sums demanded in the Momentum Addicted Put Notice (Exhibit D).

59.     Defendants have further breached the Momentum Addicted Letter Agreement by failing to provide updated financial information with respect to BYP.

60.     As a result of Defendants' breach as alleged, Momentum has been damaged in an amount that exceeds $1,369,773, plus any additional amount it is required to pay in respect of Addicted according to proof at trial, plus interest thereon.

## SECOND CLAIM FOR RELIEF

(For Breach of Aurum Addicted Letter Agreement Against BYP and Does 1-10)

61.     Aurum hereby incorporates each and every allegation contained in Paragraphs 1 through 60 above.

62.     The Aurum Addicted Letter Agreement is a valid contract.

1         63.    Aurum has performed all obligations and satisfied all conditions

2  required of it under the Aurum Addicted Letter Agreement, other than those

3  promises and conditions the performance or satisfaction of which have been excused

4  by operation of law, or the performance or satisfaction of which have been

5  prevented by Defendants.

6         64.    Defendants have breached the Aurum Addicted Letter

7  Agreement by failing to release Addicted on the requisite number of screens in the

8  U.S., by failing to negotiate in good faith, and by refusing to pay to Aurum the sums

9  demanded in the Aurum Addicted Put Notice (Exhibit E).

10        65.    Defendants have further breached the Aurum Addicted Letter

11  Agreement by failing to provide updated financial information with respect to BYP.

12        66.    As a result of Defendants' breach as alleged, Aurum has been

13  damaged in an amount that exceeds $790,826.85 and €812.42, plus any additional

14  amount it is required to pay in respect of Addicted according to proof at trial, plus

15  interest thereon.

16

17                      **THIRD CLAIM FOR RELIEF**

18  (For Breach of Alliance Films Addicted Letter Agreement Against BYP and Does 1-

19                         10)

20         67.    Alliance Films hereby incorporates each and every allegation

21  contained in Paragraphs 1 through 66 above.

22         68.    The Alliance Films Addicted Letter Agreement is a valid

23  contract.

24         69.    Alliance Films has performed all obligations and satisfied all

25  conditions required of it under the Alliance Films Addicted Letter Agreement, other

26  than those promises and conditions the performance or satisfaction of which have

27  been excused by operation of law, or the performance or satisfaction of which have

28  been prevented by Defendants.

1    70.    Defendants have breached the Alliance Films Addicted Letter

2  Agreement by serving a notice which confirmed that BYP would not meet the U.S.

3  theatrical release requirement in said Letter Agreement and by failing and refusing

4  to pay to Alliance Films the sums required under said Letter Agreement, as provided

5  in the Alliance Films Addicted Put Notice (Exhibit F).

6    71.    Defendants have further breached the Alliance Films Addicted

7  Letter Agreement by failing to provide updated financial information with respect to

8  BYP.

9    72.    Defendants have breached the Alliance Films Addicted Letter

10  Agreement by failing to distribute Addicted on the requisite number of screens in

11  the U.S., by failing to negotiate in good faith, and by failing and refusing to pay to

12  Alliance Films the sums demanded in the Alliance Films Addicted Put Notice

13  (Exhibit F).

14    73.    As a result of Defendants' breach as alleged, Alliance Films has

15  been damaged in an amount that exceeds $867,125 and CDN$12,341, plus any

16  additional amount it is required to pay in respect of Addicted according to proof at

17  trial, plus interest thereon.

18

19    **FOURTH CLAIM FOR RELIEF**

20    (For Breach of Aurum Husband Letter Agreement Against BYP and Does 1-10)

21    74.    Aurum hereby incorporates each and every allegation contained

22  in Paragraphs 1 through 73 above.

23    75.    The Aurum Husband Letter Agreement is a valid contract.

24    76.    Aurum has performed all obligations and satisfied all conditions

25  required of it under the Aurum Husband Letter Agreement, other than those

26  promises and conditions the performance or satisfaction of which have been excused

27  by operation of law, or the performance or satisfaction of which have been

28  prevented by Defendants.

1       77.    Defendants have breached the Aurum Husband Letter

2   Agreement by repudiating the obligation to distribute Husband on the requisite

3   number of screens in the U.S., by repudiating the obligation to negotiate in good

4   faith, and by repudiating the obligation to pay to Aurum the sums demanded in the

5   Aurum Husband Put Notice (Exhibit K).

6       78.    Defendants have further breached the Aurum Addicted Letter

7   Agreement by failing to provide updated financial information with respect to BYP.

8       79.    As a result of Defendants' breach as alleged, Aurum has been

9   damaged in an amount that exceeds \$1,367,353 and €37,308, plus any additional

10   amount it is required to pay in respect of Addicted according to proof at trial, plus

11   interest thereon.

12   **FIFTH CLAIM FOR RELIEF**

13   (For Breach of Alliance Films Husband Letter Agreement Against BYP and Does 1-

14   10)

15       80.    Alliance Films hereby incorporates each and every allegation

16   contained in Paragraphs 1 through 79 above.

17       81.    The Alliance Films Husband Letter Agreement is a valid

18   contract.

19       82.    Alliance Films has performed all obligations and satisfied all

20   conditions required of it under the Alliance Films Husband Letter Agreement, other

21   than those promises and conditions the performance or satisfaction of which have

22   been excused by operation of law, or the performance or satisfaction of which have

23   been prevented by Defendants.

24       83.    Defendants have breached the Alliance Films Husband Letter

25   Agreement by serving a notice which confirmed that BYP would not meet the U.S.

26   theatrical release requirement in said Letter Agreement and by failing and refusing

27   to pay to Alliance Films the sums required under said Letter Agreement, as provided

28   in the Alliance Films Husband Put Notice (Exhibit L).

84.     Defendants have breached the Alliance Films Husband Letter Agreement by repudiating the obligation to distribute Husband on the requisite number of screens in the U.S., by repudiating the obligation to negotiate in good faith, and by repudiating the obligation to pay to Alliance Films the sums demanded in the Alliance Films Husband Put Notice (Exhibit L).

85.     As a result of Defendants' breach as alleged, Alliance Films has been damaged in an amount that exceeds $1,448,786 and CND$39,513, plus any additional amount it is required to pay in respect of Addicted according to proof at trial, plus interest thereon.

## SIXTH CLAIM FOR RELIEF

(For Declaratory Relief Regarding Addicted Letter Agreements Against BYP and Does 1-10)

86.     Plaintiffs and each of them hereby incorporate each and every allegation contained in Paragraphs 1 through 85 above.

87.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties with respect to the distribution of "Addicted." Plaintiffs contend that: (a) they were contractually entitled to serve the Addicted Put Notices (Exhibits D-F); (b) the Put Notices were valid and timely; and (c) in addition to obligating BYP to pay to Plaintiffs the sums alleged, the Put Notices required BYP to accept an assignment of rights in and to the Addicted Picture in the territories licensed to Plaintiffs. Momentum is informed and believes that Defendants dispute each of these contentions.

88.     Plaintiff Momentum desires a judicial determination of its rights and duties under the Momentum Addicted Letter Agreement and a judgment declaring that: (a) Momentum was contractually entitled to provide the Momentum Addicted Put Notice; (b) the Put Notice was valid and timely; and (c) BYP is required to accept from Momentum an assignment of the distribution rights in its territory for Addicted.

89.     Plaintiff Aurum desires a judicial determination of its rights and duties under the Aurum Addicted Letter Agreement and a judgment declaring that: (a) Aurum was contractually entitled to provide the Aurum Addicted Put Notice; (b) the Put Notice was valid and timely; and (c) BYP is required to accept from Aurum an assignment of the distribution rights in its territory for Addicted.

90.     Plaintiff Alliance Films desires a judicial determination of its rights and duties under the Alliance Films Addicted Letter Agreement and a judgment declaring that: (a) Alliance Films was contractually entitled to provide the Alliance Films Addicted Put Notice; (b) the Put Notice was valid and timely; and (c) BYP is required to accept from Alliance Films an assignment of the distribution rights in its territory for Addicted.

91.     A judicial determination is necessary and appropriate at this time under the circumstances in order for the parties to ascertain their rights and obligations under the Addicted Letter Agreements.

## SEVENTH CLAIM FOR RELIEF

(For Declaratory Relief Regarding Husband Letter Agreements Against BYP and Does 1-10)

92.     Plaintiffs Aurum and Alliance Films hereby incorporate each and every allegation contained in Paragraphs 1 through 91 above.

93.     An actual controversy has arisen and now exists between Plaintiffs Aurum and Alliance Films and Defendants concerning their respective rights and duties with respect to the distribution of "Husband." Aurum and Alliance Films contend that: (a) they were contractually entitled to provide the Husband Put Notices (Exhibits K-L); (b) the Put Notices were valid and timely; and (c) in addition to obligating BYP to pay to Plaintiffs the sums alleged, the Put Notices required BYP to accept an assignment of rights in and to the Husband Picture in the territories licensed to Aurum and Alliance Films. Momentum is informed and believes that Defendants dispute each of these contentions.

1    94.    Plaintiff Aurum desires a judicial determination of its rights and

2  duties under the Aurum Husband Letter Agreement and a judgment declaring that:

3  (a) Aurum was contractually entitled to provide the Aurum Husband Put Notice; (b)

4  the Put Notice was valid and timely; and (c) BYP is required to accept from Aurum

5  an assignment of the distribution rights in its territory for Husband.

6    95.    Plaintiff Alliance Films desires a judicial determination of its

7  rights and duties under the Alliance Films Husband Letter Agreement and a

8  judgment declaring that: (a) Alliance Films was contractually entitled to provide the

9  Alliance Films Husband Put Notice; (b) the Put Notice was valid and timely; and (c)

10  BYP is required to accept from Alliance Films an assignment of the distribution

11  rights in its territory for Husband.

12    96.    A judicial determination is necessary and appropriate at this time

13  under the circumstances in order for the parties to ascertain their rights and

14  obligations under the Addicted Letter Agreements.

15

16                              **PRAYER FOR RELIEF**

17

18        WHEREFORE, Plaintiffs pray for judgment in their favor and against

19  Defendants as follows:

20

21  **ON THE FIRST CLAIM FOR RELIEF**

22    1.    To Momentum, for compensatory damages in an amount

23  according to proof, but not less than $1,369,773 and

24    2.    For prejudgment interest;

25  **ON THE SECOND CLAIM FOR RELIEF**

26    1.    To Aurum, for compensatory damages in an amount according to

27  proof, but not less than $790,826.85 and €812.42 and

28    2.    For prejudgment interest.

1 **ON THE THIRD CLAIM FOR RELIEF**

2        1.    To Alliance Films, for compensatory damages in an amount

3 according to proof, but not less than $867,125 and CDN$12,341 and

4        2.    For prejudgment interest.

5 **ON THE FOURTH CLAIM FOR RELIEF**

6        1.    To Aurum, for compensatory damages in an amount according to

7 proof, but not less than $1,367,353 and €37,308 and

8        2.    For prejudgment interest.

9 **ON THE FIFTH CLAIM FOR RELIEF**

10        1.    To Alliance Films, for compensatory damages in an amount

11 according to proof, but not less than $1,448,786 and CND$39,513 and

12        2.    For prejudgment interest.

13 **ON THE SIXTH CLAIM FOR RELIEF**

14        1.    Plaintiff Momentum requests a declaratory judgment that: (a)

15 Momentum was contractually entitled to provide the Momentum Addicted Put

16 Notice; (b) the Put Notice was valid and timely; and (c) BYP is required to accept

17 from Momentum an assignment of the distribution rights in its territory for

18 Addicted.

19        2.    Plaintiff Aurum requests a declaratory judgment that: (a) Aurum

20 was contractually entitled to provide the Aurum Addicted Put Notice; (b) the Put

21 Notice was valid and timely; and (c) BYP is required to accept from Aurum an

22 assignment of the distribution rights in its territory for Addicted.

23        3.    Plaintiff Alliance Films requests a declaratory judgment that: (a)

24 Alliance Films was contractually entitled to provide the Alliance Films Addicted Put

25 Notice; (b) the Put Notice was valid and timely; and (c) BYP is required to accept

26 from Alliance Films an assignment of the distribution rights in its territory for

27 Addicted.

28

**ON THE SEVENTH CLAIM FOR RELIEF**

1.      Plaintiff Aurum desires a judicial determination of its rights and duties under the Aurum Husband Letter Agreement and a judgment declaring that: (a) Aurum was contractually entitled to provide the Aurum Husband Put Notice; (b) the Put Notice was valid and timely; and (c) BYP is required to accept from Aurum an assignment of the distribution rights in its territory for Husband.

2.      Plaintiff Alliance Films desires a judicial determination of its rights and duties under the Alliance Films Husband Letter Agreement and a judgment declaring that: (a) Alliance Films was contractually entitled to provide the Alliance Films Husband Put Notice; (b) the Put Notice was valid and timely; and (c) BYP is required to accept from Alliance Films an assignment of the distribution rights in its territory for Husband.

**ON ALL CLAIMS FOR RELIEF**

For such further relief as the Court deems just and proper.

DATED:  March 9, 2009            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _Bruce E. Van Dalsem /AB_
    Bruce E. Van Dalsem
    Attorneys for Plaintiff
    Alliance Atlantis Releasing Limited,
    dba Momentum Pictures

1

## DEMAND FOR JURY TRIAL

Plaintiffs Alliance Atlantis Releasing Limited, doing business as Momentum Pictures, Aurum Producciones, S.A., and Alliance Films Inc. hereby demand trial by jury for all claims triable by jury.

DATED:  March 9, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By *Bruce E. Van Dalsem / LB*
Bruce E. Van Dalsem
Attorneys for Plaintiff
Alliance Atlantis Releasing Limited,
dba Momentum Pictures

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

22016/2791752.2

# EXHIBIT A

Bob Yari Productions
A California Corporation
("BYP")
10850 Wilshire Blvd. 6th Floor Los Angeles, CA 90024
(O) 310-234-8970 (F) 310-234-8975

November 13, 2006

Alliance Atlantis Releasing Limited
Trading as Momentum Pictures
2nd Floor
184 - 192 Drummond Street
London NW1 3HP

Tel: +44 207 391 6900
Fax: +44 207 383 0404

Re:     "Addicted" – *Letter Agreement*

Ladies and Gentlemen:

Reference is hereby made to that certain license agreement dated as of November 10, 2006 (the **"Agreement"**) between Syndicate Films International, LLC (**"Sales Agent"**) as sales agent for Addicted Distribution, LLC (**"Licensor"**) and Alliance Atlantis Releasing Limited trading as Momentum Pictures (**"Distributor"**) pursuant to which Distributor was granted certain rights in and to that motion picture currently entitled "Addicted" (the **"Picture"**).  As a material inducement for Distributor to enter into the Agreement, BYP hereby acknowledges that it is in its best interests to and is willing to enter into this Letter Agreement for the benefit of Distributor and agrees as follows:

For good and valuable consideration, the receipt and sufficiency of such is hereby acknowledged and accepted, the parties agree that if:

(I) Sales Agent and/or Licensor fail to provide evidence satisfactory to Distributor (e.g. through EDI website) of a U.S. theatrical release commitment by a US distribution company (meaning Universal, Twentieth Century Fox, Sony Pictures Entertainment, Paramount Pictures, The Walt Disney Company, MGM, Warner Bros. New Line, Focus Features, Fox Searchlight, Screen Gems, Warner Independent Pictures ["Major Studios"]  Yari Film Group Releasing, or other US distribution company, including any Major Studio's specialty distribution units or affiliates, approved by Distributor in its sole discretion, but specifically excluding Sony Pictures Classics and Picture House), for the Picture on no less than 700 screens on the earlier of (a) two (2) years from completion of principal photography of the Picture or (b) one (1) year after Delivery and;

EXHIBIT ___A___

PAGE    29

(II) Licensor and Distributor agree within thirty (30) business days from the commencement of good faith negotiations to reduce the Minimum Guarantee ("Reduced Addicted Guarantee") of the Picture, BYP hereby agrees to refund the difference between the Minimum Guarantee and the Reduced Addicted Guarantee within thirty (30) business days of Distributor's request if Licensor fails to do so.

In the event that Licensor and Distributor fail to agree on a reduction of the Minimum Guarantee within thirty (30) business days from the commencement of negotiations, and the Licensor and/or Sales Agent fail to provide evidence of the theatrical commitment stated in (I) above, then unless Distributor has prior to sending the "Put Notice" (as hereafter defined) released the Picture in any media that generates Gross Receipts in the Territory (as both are defined in the Agreement) (hereafter referred to as the "Prior Release"), Distributor shall have the right to send a notice (herein the "Put Notice") to BYP wherein it notifies BYP that it is exercising its right to require BYP to accept an assignment of all Distributor's rights in and to the Picture and BYP shall be obligated to repay all amounts paid by Distributor and any Distribution Expenses (Distribution Expenses capped at US$500,000) previously incurred by Distributor (together with interest on the Minimum Guarantee (at LIBOR +2%)) within thirty (30) business days of Distributor's written request for repayment as consideration for such assignment.

Distributor's rights pursuant to this Letter Agreement (if exercised) shall not relieve Distributor of its obligations under that certain Notice of Assignment dated November 10, 2006 by and among Distributor, Licensor, Film Finances, Inc. (the "Completion Guarantor") and ICB Entertainment Finance, (the "Bank") entered into in connection with the Picture ("Notice") unless Distributor has received Bank Termination Notice. If Bank Termination Notice has not been received Distributor shall pay the Minimum Guarantee to the Bank and BYP hereby undertakes to refund the Minimum Guarantee or the difference between the Minimum Guarantee and the Reduced Addicted Guarantee (if applicable) and all amounts actually paid by Distributor to the Bank or the Completion Guarantor, as applicable, as required under the Notice, within thirty (30) business days of Distributor's request.

BYP agrees to provide Distributor with updated financial information regarding BYP within 12 months of the date hereof.

No amendment or modification of any of the provisions of this Letter Agreement, nor any waiver or consent with respect to any of Distributor's rights or BYP's obligations to Distributor under this Letter Agreement shall be effective unless such amendment, modification, or waiver is in writing and is signed by Distributor and BYP. This Letter Agreement may be executed in counterparts, each of which together shall constitute one and the same instrument. Delivery of an executed counterpart of this Letter Agreement by facsimile shall be equally effective as delivery of a manually executed counterpart. Any party delivering an executed counterpart by facsimile shall also deliver a manually executed counterpart of this Letter Agreement, but failure to do so shall not effect the validity, enforceability, or binding effect of this Letter Agreement, and the parties hereby waive any right they may have to object to said treatment.

Capitalized terms used herein, but not defined in this Letter Agreement shall have the meaning given to those terms in the Agreement or the Notice (as applicable).

This Letter Agreement will be governed by and construed in accordance with the laws of the State of California, without regard to its conflicts of laws principles. The parties agree to submit to the exclusive jurisdiction of the courts of the State of California.

Any notices to be served under this Letter Agreement shall be served in accordance with the procedures and shall be subject to the provisions set forth in paragraph 27 of Schedule A of the Agreement.

If the foregoing correctly reflects your understanding would you kindly sign the place provided below whereupon this letter will constitute a binding agreement between us.

Dated: November 13, 2006

**AGREED AND ACCEPTED:**
Bob Yari Productions
a California corporation

By:...........................

Its:       CEO

**AGREED AND ACCEPTED:**
ALLIANCE ATLANTIS RELEASING LIMITED
trading as Momentum Pictures.

By:...........................

Its:

EXHIBIT ___A___

PAGE       31

# EXHIBIT B

Bob Yari Productions
A California Corporation
("BYP")
10850 Wilshire Blvd. 6th Floor Los Angeles, CA 90024
(O) 310-234-8970 (F) 310-234-8975

October 25, 2006

Aurum Producciones S.A.
Avenida de Burgos 12, 10a
28036 Madrid
Spain

Tel: +
Fax: +

Re:     "Addicted" – *Letter Agreement*

Ladies and Gentlemen:

Reference is hereby made to that certain license agreement dated as of October 5, 2006 (the "Agreement") between Fintage Magyar Kft. ("Licensor") through its sales agent Syndicate Films International, LLC ("Sales Agent") and Aurum Producciones S.A. ("Distributor") pursuant to which Distributor was granted certain rights in and to that motion picture currently entitled "Addicted" (the "Picture"). As a material inducement for Distributor to enter into the Agreement, BYP hereby acknowledges that it is in its best interests to and is willing to enter into this Letter Agreement for the benefit of Distributor and agrees as follows:

For good and valuable consideration, the receipt and sufficiency of such is hereby acknowledged and accepted, the parties agree that if:

(I) Sales Agent and/or Licensor fail to provide evidence satisfactory to Distributor (e.g. through EDI website) of a U.S. theatrical release commitment by a US distribution company (meaning Universal, Twentieth Century Fox, Sony Pictures Entertainment, Paramount Pictures, The Walt Disney Company, MGM, Warner Bros. New Line, Focus Features, Fox Searchlight, Screen Gems, Warner Independent Pictures ["Major Studios"] Yari Film Group Releasing, or other US distribution company, including any Major Studio's specialty distribution units or affiliates, approved by Distributor in its sole discretion, but specifically excluding Sony Pictures Classics and Picture House), for the Picture on no less than 700 screens on the earlier of (a) two (2) years from completion of principal photography of the Picture or (b) one (1) year after Delivery and;

(II) Licensor and Distributor agree within thirty (30) business days from the commencement of good faith negotiations to reduce the Minimum Guarantee ("Reduced Addicted Guarantee") of the Picture:

EXHIBIT ___*B*___

PAGE ___*72*___

(a) BYP hereby agrees to refund the difference between the Minimum Guarantee and the Reduced Addicted Guarantee within thirty (30) business days of Distributor's request if Licensor fails to do so and;

(b) Licensor agrees that (i) to the extent that Distributor is unable to fully recoup the Reduced Addicted Guarantee, interest on the Reduced Addicted Guarantee at LIBOR+2% and Distribution Expenses from the Gross Receipts of the Picture, it shall be able to recoup such sums from the Gross Receipts generated from the exploitation of any picture acquired from Licensor (or any of its affiliates) in the Territory, but not deducted from the Reduced Addicted Guarantee payable in connection with such picture(s); (ii) the Term of the Rights granted for the Picture shall be extended to twenty-seven (27) years from Delivery; (iii) the Distribution Fee for the Picture shall increase to twenty-seven and one-half percent (27 ½ %); and (iv) to the extent that Distributor is unable to fully recoup the Reduced Addicted Guarantee, interest on the Reduced Addicted Guarantee at LIBOR+2% and Distribution Expenses from the Gross Receipts of the Picture, it shall be able to recoup such sums from the Gross Receipts generated from the exploitation of any picture acquired from Licensor and/or Sales Agent (or any of their affiliates) in the UK territories, but not deducted from the Minimum Guarantee(s) payable in connection with such picture(s).

In the event that Licensor and Distributor fail to agree on a reduction of the Minimum Guarantee within thirty (30) business days from the commencement of negotiations, and the Licensor and/or Sales Agent fail to provide evidence of the theatrical commitment stated in (I) above, then unless Distributor has prior to sending the "Put Notice" (as hereafter defined) released the Picture in any media that generates Gross Receipts in the Territory (as both are defined in the Agreement) (hereafter referred to as the "Prior Release"), Distributor shall have the right to send a notice (herein the "Put Notice") to BYP wherein it notifies BYP that it is exercising its right to require Distributor to accept an assignment of all Distributor's rights in and to the Picture and BYP shall be obligated to repay all amounts paid by Distributor and any Distribution Expenses (Distribution Expenses capped at US$500,000) previously incurred by Distributor (together with interest on the Minimum Guarantee (at LIBOR +2%)) within thirty (30) business days of Distributor's written request for repayment as consideration for such assignment.

Distributor's rights pursuant to this Letter Agreement (if exercised) shall not relieve Distributor of its obligations under that certain Notice of Assignment dated October 5, 2006 by and among Distributor, Licensor, Film Finances, Inc. (the "Completion Guarantor") and ICB Entertainment Finance, (the "Bank") entered into in connection with the Picture ("Notice") unless Distributor has received Bank Termination Notice. If Bank Termination Notice has not been received Distributor shall pay the Minimum Guarantee to the Bank and BYP hereby undertakes to refund the Minimum Guarantee or the difference between the Minimum Guarantee and the Reduced Addicted Guarantee (if applicable) and all amounts actually paid by Distributor to the Bank or the Completion Guarantor, as applicable, as required under the Notice, within thirty (30) business days of Distributor's request.

BYP agrees to provide Distributor with updated financial information regarding BYP within 12 months of the date hereof.

No amendment or modification of any of the provisions of this Letter Agreement, nor any waiver or consent with respect to any of Distributor's rights or BYP's obligations to Distributor under this Letter Agreement shall be effective unless such amendment, modification, or waiver is in writing and is signed by Distributor and BYP. This Letter Agreement may be executed in counterparts, each of which together shall constitute one and the same instrument. Delivery of an executed counterpart of this Letter Agreement by facsimile shall be equally effective as delivery of

EXHIBIT __B__

PAGE __33__

a manually executed counterpart. Any party delivering an executed counterpart by facsimile shall also deliver a manually executed counterpart of this Letter Agreement, but failure to do so shall not effect the validity, enforceability, or binding effect of this Letter Agreement, and the parties hereby waive any right they may have to object to said treatment.

Capitalized terms used herein, but not defined in this Letter Agreement shall have the meaning given to those terms in the Agreement or the Notice (as applicable).

This Letter Agreement will be governed by and construed in accordance with the laws of the State of California, without regard to its conflicts of laws principles. The parties agree to submit to the exclusive jurisdiction of the courts of the State of California.

Any notices to be served under this Letter Agreement shall be served in accordance with the procedures and shall be subject to the provisions set forth in paragraph 27 of Schedule A of the Agreement.

If the foregoing correctly reflects your understanding would you kindly sign the place provided below whereupon this letter will constitute a binding agreement between us.

Dated: October 25, 2006

**AGREED AND ACCEPTED:**
Bob Yari Productions
a California corporation

By: ...............................
Its: CEO

**AGREED AND ACCEPTED:**
Aurum Producciones S.A.

By: ...............................
Its:

EXHIBIT ___ V

PAGE ___ 34

# EXHIBIT C

Bob Yari Productions
A California Corporation
("BYP")
. 10850 Wilshire Blvd. 6th Floor Los Angeles, CA 90024
(O) 310-234-8970 (F) 310-234-8975

October 27, 2006

Motion Picture Distribution, LP
121 Bloor Street East, Suite 1500
Toronto, Ontario
Canada
M4W 3M5

Tel: +(416) 967-1174
Fax: +(416) 960-0971

Re:    "Addicted" – *Letter Agreement*

Ladies and Gentlemen:

Reference is hereby made to that certain license agreement dated as of October 25, 2006 (the "Agreement") between Syndicate Films International, LLC ("Sales Agent") as sales agent for Addicted Distribution, LLC ("Licensor") and Motion Picture Distribution, LP ("Distributor") pursuant to which Distributor was granted certain rights in and to that motion picture currently entitled "Addicted" (the "Picture"). As a material inducement for Distributor to enter into the Agreement, BYP hereby acknowledges that it is in its best interests to and is willing to enter into this Letter Agreement for the benefit of Distributor and agrees as follows:

For good and valuable consideration, the receipt and sufficiency of such is hereby acknowledged and accepted, the parties agree that:

A.

(i) Sales Agent and/or Licensor shall deliver written notice to Distributor confirming whether or not Licensor or Sales Agent has secured a U.S. theatrical release commitment by a U.S. distribution company (herein the "U.S. Theatrical Release Commitment") (including only Universal, Twentieth Century Fox, Sony Pictures Entertainment, Paramount Pictures, The Walt Disney Company, MGM, Warner Bros. New Line, Focus Features, Fox Searchlight, Screen Gems, Warner Independent Pictures ["Major Studios"] Yari Film Group Releasing, or other US distribution company, including any Major Studio's specialty distribution units or affiliates, approved by Distributor in its sole discretion, but specifically excluding Sony Pictures Classics and Picture House), for release of the Picture on no less than 700 screens simultaneously in the U.S., but not necessarily in the initial release, and such written notice

EXHIBIT ____C____

PAGE ____39____

shall be provided at least six (6) months from the anticipated theatrical release of the Picture in the U.S. (the "Six (6) Month Notice"); and

(II) If the Six (6) Month Notice confirms that the U.S. Theatrical Release Commitment will not be satisfied and Licensor and Distributor agree within thirty (30) business days from the commencement of good faith negotiations to reduce the Minimum Guarantee ("Reduced Addicted Guarantee") of the Picture, BYP hereby agrees to refund the difference between the Minimum Guarantee and the Reduced Addicted Guarantee within thirty (30) days of Distributor's request.

(III) In the event that Licensor and Distributor fail to agree on a reduction of the Minimum Guarantee within thirty (30) business days from the commencement of negotiations where the Six (6) Month Notice confirms that U.S. Theatrical Release Commitment will not be satisfied, then unless Distributor has prior to sending the "Put Notice" (as hereafter defined) released the Picture in any media that generates Gross Receipts in the Territory (as both are defined in the Agreement) (hereafter referred to as the "Prior Release"), Distributor shall have the right to send a notice (herein the "Put Notice") to BYP wherein it notifies BYP that it is exercising its right to require BYP to accept an assignment of all Distributor's rights in and to the Picture and BYP shall be obligated to repay all amounts paid by Distributor (including the Minimum Guarantee and interest on the Minimum Guarantee (at LIBOR +2%)) and any Distribution Expenses within thirty (30) days from Distributor's written request for repayment as consideration for such assignment (except any Distribution Expenses incurred by Distributor prior to the date the Six (6) Month Notice was delivered, however such expenses may be recouped by Distributor in the event it does not exercise its right to terminate the Agreement pursuant to this Letter Agreement and proceeds pursuant to the terms of the Agreement).

B.

(I) If, after Licensor or Sales Agent delivers the Six (6) Month Notice to Distributor that confirms that the U.S. Theatrical Release Commitment will be satisfied but not later than three (3) months before the anticipated theatrical release in the U.S., Licensor and/or Sales Agent do then not anticipate that the U.S. theatrical release commitment will be satisfied, either Licensor or Sales Agent shall send written notice to Distributor of such event (the "Three (3) Month Notice"); and

(II) If, after Licensor or Sales Agent sends the Three (3) Month Notice, Licensor and Distributor agree within thirty (30) business days from the commencement of good faith negotiations to a Reduced Addicted Guarantee for the Picture, BYP hereby agrees to refund the difference between the Minimum Guarantee and the Reduced Addicted Guarantee within thirty (30) days of Distributor's request.

(III) In the event that Licensor or Sales Agent delivers the Three (3) Month Notice and Licensor and Distributor fail to agree on a reduction of the Minimum Guarantee within thirty (30) business days from the commencement of negotiations, then unless there has been a Prior Release of the Picture in advance of Distributor sending the Put Notice, Distributor shall have the right to send a Put Notice to BYP and BYP shall be obligated to repay all amounts paid by Distributor (including the Minimum Guarantee and interest on the Minimum Guarantee (at LIBOR +2%)) and any Distribution Expenses within thirty (30) days from Distributor's written request for repayment as consideration for such assignment (except any Distribution Expenses incurred by Distributor prior to the date the Six (6) Month

EXHIBIT ___C___ $^2$

PAGE ___3b___

Notice was delivered however such expenses may be recouped by Distributor in the event it does not exercise its right to terminate the Agreement pursuant to this Letter Agreement and proceeds pursuant to the Agreement).

C. In the event that Licensor or Sales Agent delivers the Six (6) Month Notice that confirms that the U.S. Theatrical Release Commitment will be satisfied and does not thereafter deliver the Three (3) Month Notice, and if Licensor does not provide evidence of the U.S. Theatrical Release Commitment through EDI, within ten (10) weeks of the U.S. theatrical release, i.e. the Picture does not, in fact, get released by a Major Studio, Yari Film Group Releasing, or other distributor approved by Distributor in its sole discretion on at least 700 screens simultaneously in the U.S., but not necessarily in the initial release, then BYP shall be obligated to repay the Minimum Guarantee and interest on the Minimum Guarantee (at LIBOR +2%)) within thirty (30) days from Distributor's written request for repayment and the Distribution Fee (as defined in the Agreement) shall decrease to twenty percent (20%) in all media.

In addition, Licensor agrees that to the extent that Distributor is unable to fully recoup the Minimum Guarantee, interest on the Minimum Guarantee at LIBOR+2% and Distribution Expenses from the Gross Receipts derived the following pictures (licensed to Distributor separately) entitled "Haven", "Gray Matters", "Winter Passing" and "Find Me Guilty" (collectively the "Crossed Pictures") it shall be able to recoup such sums from seventy five percent of one hundred percent (75% of 100%) of the Gross Receipts generated from the exploitation of the Picture up to an amount of six hundred thousand dollars (US$600,000) (if not previously recouped from any other picture. Distributor acquires from Licensor or Sales agent [or any of their affiliates] in the Territory).

Distributor's rights pursuant to this Letter Agreement (if exercised) shall not relieve Distributor of its obligations under that certain Notice of Assignment dated October 25, 2006 by and among Distributor, Licensor, Film Finances, Inc. (the "Completion Guarantor") and ICB Entertainment Finance, (the "Bank") entered into in connection with the Picture ("Notice") unless Distributor has received Bank Termination Notice. If Bank Termination Notice has not been received Distributor shall pay the Minimum Guarantee to the Bank and BYP hereby undertakes to refund the Minimum Guarantee or the difference between the Minimum Guarantee and the Reduced Addicted Guarantee (if applicable) and all amounts actually paid by Distributor to the Bank or the Completion Guarantor, as applicable, as required under the Notice, within thirty (30) days of Distributor's request.

BYP agrees to provide Distributor with updated financial information regarding BYP within 12 months of the date hereof.

No amendment or modification of any of the provisions of this Letter Agreement, nor any waiver or consent with respect to any of Distributor's rights or BYP's obligations to Distributor under this Letter Agreement shall be effective unless such amendment, modification, or waiver is in writing and is signed by Distributor and BYP. This Letter Agreement may be executed in counterparts, each of which together shall constitute one and the same instrument. Delivery of an executed counterpart of this Letter Agreement by facsimile shall be equally effective as delivery of a manually executed counterpart. Any party delivering an executed counterpart by facsimile shall also deliver a manually executed counterpart of this Letter Agreement, but failure to do so shall not effect the validity, enforceability, or binding effect of this Letter Agreement, and the parties hereby waive any right they may have to object to said treatment.

EXHIBIT __C__ [3]

PAGE __37__

Capitalized terms used herein, but not defined in this Letter Agreement shall have the meaning given to those terms in the Agreement or the Notice (as applicable).

This Letter Agreement will be governed by and construed in accordance with the laws of the State of California, without regard to its conflicts of laws principles. The parties agree to submit to the exclusive jurisdiction of the courts of the State of California.

Any notices to be served under this Letter Agreement shall be served in accordance with the procedures and shall be subject to the provisions set forth in paragraph 27 of Schedule A of the Agreement.

If the foregoing correctly reflects your understanding would you kindly sign the place provided below whereupon this letter will constitute a binding agreement between us.

Dated: October 27, 2006

AGREED AND ACCEPTED:                    AGREED AND ACCEPTED:
Bob Yari Productions                     Motion Picture Distribution, LP
a California corporation                 By its sole general partner Motion Picture
                                         Distribution Inc.

By:..............................        By:..............................
Its:  CFO                                Its:

EXHIBIT ___C___

PAGE ___38___

# EXHIBIT D

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 9, 2009

<u>VIA PERSONAL SERVICE, FACSIMILE (310) 234 8975 (310) 234 0902 AND E-MAIL</u>

Bob Yari Productions
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and*
*Head of Business Affairs*

Behzad Nahai
Nahai Law Group
10850 Wilshire Blvd, Suite 1100
Los Angeles, CA 90024
bnahai@nahailawgroup.com

Addicted Distribution, LLC ("Licensor")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal*
*and Business Affairs*

Syndicate Films International, LLC ("Agent")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal and*
*Business Affairs*

Re:   "Addicted" - Momentum Letter Agreement

Dear Ladies and Gentlemen:

Reference is made herein to: (i) the letter agreement dated November 13, 2006 (the "Letter
Agreement") entered into between Bob Yari Productions ("BYP") and Alliance Atlantis
Releasing Limited, trading as Momentum Pictures ("Momentum") with respect to the film
entitled "Addicted" (the "Film"), pursuant to which BYP and certain of its affiliates assumed
certain obligations for the benefit of Momentum; (ii) the license agreement dated November 10,
2006 relating to the Film between Momentum and Syndicate Films International, LLC on behalf
of BYP-affiliate Addicted Distribution, LLC (the "License Agreement"); and (iii) the letter
relating to the Film dated November 24, 2008 and sent by the undersigned on Momentum's
behalf (the "Good Faith Negotiation Letter").

EXHIBIT **D**

PAGE **391**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Bob Yari Productions
Addicted Momentum Letter Agreement
January 9, 2008
Page 2 of 3

Pursuant to the terms of the Letter Agreement, Momentum and the Licensor had 30 business
days from commencement of good faith negotiations to agree upon a reduced Minimum
Guarantee. Such 30 business day period began on service of the Good Faith Negotiation Letter.
Momentum has provided BYP with a bona fide offer in writing, but in breach of the terms of the
Letter Agreement, the Licensor and Syndicate have failed even to engage in the negotiations on
the spurious grounds that principal photography did not complete until May 2007. The 30
business day period ran out today, January 9, 2009.

Since Licensor and Momentum have failed to agree a Reduced Minimum Guarantee in such 30
business day period, Momentum is entitled under the terms of the Letter Agreement to require
BYP to accept an assignment of Momentum's rights in the Film and BYP is obligated to repay:
(i) all amounts paid by Momentum in respect of the Film including the Minimum Guarantee and
interest thereon at LIBOR plus 2%; and (ii) any Distribution Expenses previously incurred by
Momentum (as defined in the License Agreement and capped at $500,000) (collectively, (i) and
(ii) are referred to as "Repayment Amounts").

Momentum is hereby exercising that right and this letter is the "Put Notice"; accordingly
Momentum demands payment by BYP of the Repayment Amounts and all amounts due by
Momentum under the License Agreement, in consideration of the assignment.

As at today's date the Repayment Amounts total US$1,369,77.53, consisting of Minimum
Guarantee payments of US$1,330,000, interest thereon of US$34,926 and Distribution Expenses
of $4,847.53. The foregoing is due and payable by BYP within 30 business days, i.e. no later
than February 23, 2009. Payment should be made in accordance with the invoice attached to this
letter. In addition, please direct payment of the final US$70,000 of the Minimum Guarantee to
ICB Entertainment Finance (the "Bank"), in accordance with the terms and conditions of that
certain Notice of Assignment dated July 12, 2006 by and among others Distributor, Film
Finances, Inc. and the Bank (the "NOA") and indicating such payment is being made on behalf
of and in discharge of the obligations of Distributor under the NOA.

If BYP elects to ignore its obligations under the Letter Agreement, Momentum will avail itself of
the appropriate judicial remedies for such breach. This letter is not intended as a full or complete
statement of Momentum's position with respect to the matters discussed herein, the Film, the
License Agreement, or the Letter Agreement and it should not be so construed.

Very truly yours,

Bruce E. Van Dalsem

2

EXHIBIT _____ D
PAGE _____ 40

Bob Yari Productions
Addicted Momentum Letter Agreement
January 9, 2008
Page 3 of 3

cc:     Charles Layton (via e-mail);
        Xavier Marchand (via e-mail);
        Amy Paquette, Esq. (via e-mail);
        Spyro Markesinis, Esq. (via e-mail);
        Yonaton Rosenzweig, Esq. (via e-mail);
        Bob Yari (via e-mail);
        Elizabeth Bell, Esq. (via e-mail);
        Kendra Dousette (via e-mail);
        Dennis Brown (via e-mail).

**End:**    Invoice

22016/2756147.1

3

EXHIBIT   D

PAGE   41



**Alliance Atlantis Releasing Limited**
T/A Momentum Pictures
184-192 Drummond Street
2nd Floor
London, UK   NW1 3HP

**Invoice INV0002823**

VAT Registration No: 815-3301-64

| | |
|---|---|
| Invoice Date | January 09, 2009 |
| Customer Code: | BOBYARI |
| PO No. | |
| Contract No. | |
| Terms | Net 28 |
| Due Date | February 06, 2009 |
| Shipped Date | January 09, 2009 |

**Bill to:**
Bob Yari Productions
10850 Wilshire Blvd
6th Floor
Los Angeles
CA
90024

**Ship to:**

| Product # | Reference | Description | Qty Shipped | Unit Price | Discount | Item Total |
|---|---|---|---|---|---|---|
| | 104968 | Repayment of Minimum Guarantee pursuant to letter agreement | 1.00 | 1,330,000.00 | | US1,330,000.00 |
| | 104968 | Interest on MG | 1.00 | 34,926.00 | | US34,926.00 |
| | 104968 | Distribution Expenses | 1.00 | 4,847.53 | | US4,847.53 |

**Please remit payment to:**
**Alliance Atlantis Releasing Limited**

T/A Momentum Pictures
184-192 Drummond Street
2nd Floor
London, UK   NW1 3HP

Attention: Accounts Receivable

| | |
|---|---|
| Subtotal | 1,369,773.53 |
| Discount | 0.00 |
| Freight | 0.00 |
| VAT | 0.00 |
| Total | 1,369,773.53 |
| Paid | 0.00 |
| Amount Due | US1,369,773.53 |

EXHIBIT D

PAGE 42

# EXHIBIT E

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 9, 2009

<u>VIA PERSONAL SERVICE, FACSIMILE (310) 234 8975  (310) 234 0902 AND E-MAIL</u>

Bob Yari Productions
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and*
*Head of Business Affairs*

Behzad Nahai
Nahai Law Group
10850 Wilshire Blvd, Suite 1100
Los Angeles, CA 90024
bnahai@nahailawgroup.com

Addicted Distribution, LLC ("Licensor")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal*
*and Business Affairs*

Syndicate Films International, LLC ("Agent")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal and*
*Business Affairs*

Re:    "Addicted" - Aurum Letter Agreement

Dear Ladies and Gentlemen:

Reference is made herein to: (i) the letter agreement dated October 25, 2006 (the "Letter Agreement") entered into between Bob Yari Productions ("BYP") and Aurum Producciones S.A. ("Aurum") with respect to the film entitled "Addicted" (the "Film"), pursuant to which BYP and certain of its affiliates assumed certain obligations for the benefit of Aurum; (ii) the license agreement dated October 5, 2006 relating to the Film between Aurum and Fintage Magyar Kft. (the "License Agreement" and "Licensor" respectively); and (iii) the letter relating to the Film dated November 24, 2008 and sent by the undersigned on Aurum's behalf (the "Good Faith Negotiation Letter").

Pursuant to the terms of the Letter Agreement, Aurum and the Licensor had 30 business days from commencement of good faith negotiations to agree upon a reduced Minimum Guarantee.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT *E*

PAGE 43

Bob Yari Productions
Addicted Aurum Letter Agreement
January 9, 2008
Page 2 of 3

Such 30 business day period began on service of the Good Faith Negotiation Letter. Aurum has provided BYP with a bona fide offer in writing, but in breach of the terms of the Letter Agreement, the Licensor have failed even to engage in the negotiations on the spurious grounds that principal photography did not complete until May 2007. The 30 business day period has run out.

Since Licensor and Aurum have failed to agree a Reduced Minimum Guarantee in such 30 business day period, Aurum is entitled under the terms of the Letter Agreement to require BYP to accept an assignment of Aurum's rights in the Film and BYP is obligated to repay: (i) all amounts paid by Aurum in respect of the Film including the Minimum Guarantee and interest thereon at LIBOR plus 2%; and (ii) any Distribution Expenses previously incurred by Aurum (as defined in the License Agreement and capped at $500,000) (collectively, (i) and (ii) are referred to as "Repayment Amounts").

Aurum is hereby exercising that right and this letter is the "Put Notice"; accordingly Aurum demands payment by BYP of the Repayment Amounts and all amounts due by Aurum under the License Agreement, in consideration of the assignment.

As at today's date the Repayment Amounts total US$790,826.85 and €812.42, consisting of Minimum Guarantee payments of US$777,015, interest thereon of US$13,811.85 and Distribution Expenses of €812.42. The foregoing is due and payable by BYP within 30 business days, i.e. no later than February 23, 2009. Payment should be made in accordance with the invoice attached to this letter. In addition, please direct payment of the final US$40,896 of the Minimum Guarantee to ICB Entertainment Finance (the "Bank"), in accordance with the terms and conditions of that certain Notice of Assignment dated October 5, 2006 by and among others Distributor, Film Finances, Inc. and the Bank (the "NOA") and indicating such payment is being made on behalf of and in discharge of the obligations of Distributor under the NOA.

If BYP elects to ignore its obligations under the Letter Agreement, Aurum will avail itself of the appropriate judicial remedies for such breach. This letter is not intended as a full or complete statement of Aurum's position with respect to the matters discussed herein, the Film, the License Agreement, or the Letter Agreement and it should not be so construed.

Very truly yours,

Bruce E. Van Dalsem

EXHIBIT E
PAGE 44

2

Bob Yari Productions
Addicted Aurum Letter Agreement
January 9, 2008
Page 3 of 3

cc:      Charles Layton (via e-mail);
           Xavier Marchand (via e-mail);
           Amy Paquette, Esq. (via e-mail);
           Spyro Markesinis, Esq. (via e-mail);
           Yonaton Rosenzweig, Esq. (via e-mail);
           Bob Yari (via e-mail);
           Elizabeth Bell, Esq. (via e-mail);
           Kendra Dousette, Esq. (via e-mail).

Enc:     Invoices

22016/2756144.1

3

EXHIBIT _____ E

PAGE _____ 45



SOCIEDAD UNIPERSONAL

| Nº factura | 200817516 |
|---|---|
| Fecha factura: | 31/12/08 |

RAZÓN SOCIAL:

FINTAGE MAGYAR KFT
CL TERÉZ KÖRUT 46 3rd Floor
1066 BUDAPEST (BUDAPEST)

DIRECCIÓN:

FINTAGE MAGYAR KFT
CL Teréz Köarut 46 3rd Floor
1066 BUDAPEST (BUDAPEST)

| Concepto | USD |
|---|---|
| MG ADDICTED | 777.015,00 |

Please send wire transfer to:
**Aurum Producciones, S.A.**
**HSBC BANK PLC SUC. ESPAÑA**
Pza.Pablo Ruiz Picasso, s/n
28020-Madrid
**Account number:**
**ES2201620001240014307010**
**Swift Code: MIDLESMM**

| | Total | 777.015,00 |
|---|---|---|

Aurum Producciones Sociedad Unipersonal, S.A., Inscrito en el Registro Mercantil de Madrid, Tomo 8712, Libro 0, Folio 102, Sección 8, Hoja M-140217, Inscripción 1ª. CIF: A-81/0259742

EXHIBIT __E__
PAGE __46__

# AURUM

SOCIEDAD UNIPERSONAL

| Nº factura | 200817517 |
| Fecha factura: | 31/12/08 |

**RAZÓN SOCIAL:**

FINTAGE MAGYAR KFT
CL TERÉZ KÖRUT 46 3rd Floor
1066 BUDAPEST (BUDAPEST)

**DIRECCIÓN:**

FINTAGE MAGYAR KFT
CL Teréz Köarut 46 3rd Floor
1066 BUDAPEST (BUDAPEST)

| Concepto | USD |
|---|---|
| Interests on MG Addicted | 13.811,85 |

Please send wire transfer to:
**Aurum Producciones, S.A.**
**HSBC BANK PLC SUC. ESPAÑA**
Pza. Pablo Ruiz Picasso, s/n
28020-Madrid
**Account number:**
**ES2201620001240014307010**
**Swift Code: MIDLESMM**

| | Total | 13.811,85 |
|---|---|---|

Avda. de Burgos, 12, 10ª - 28036 MADRID - Teléf. 91 768 48 00 - Fax 91 768 48 01
www.aurum.es

Aurum Producciones Sociedad Unipersonal, S.A., Inscrito en el Registro Mercantil de Madrid, Tomo 8712, Libro 0, Folio 102, Sección 8, Hoja M-140217, Inscripción 1ª. CIF: A-81/025942.

EXHIBIT E

PAGE 47



**AURUM**
SOCIEDAD UNIPERSONAL

| Nº factura | 200817618 |
|---|---|
| Fecha factura: | 31/12/08 |

**RAZÓN SOCIAL:**

FINTAGE MAGYAR KFT
CL TERÉZ KÖRUT 46 3rd Floor
1066 BUDAPEST (BUDAPEST)

**DIRECCIÓN:**

FINTAGE MAGYAR KFT
CL Teréz Köarut 46 3rd Floor
1066 BUDAPEST (BUDAPEST)

| Concepto | EUR |
|---|---|
| Distribution Expenses Addicted | 812,42 |

Por favor envíen transferencia a:
**Aurum Producciones, S.A.**
**HSBC BANK PLC SUC. ESPAÑA**
Pza. Pablo Ruiz Picasso, s/n
28020-Madrid
**Nº Cta.:**
**ES2501620001250014307004**
**Swift Code: MIDLESMM**

| | Total EUR exento IVA | 812,42 |
|---|---|---|

EXHIBIT _E_

PAGE _48_

*Aurum Producciones Sociedad Unipersonal, S.A., inscrita en el Registro Mercantil de Madrid, Tomo 8712, Libro 0, Folio 102, Sección 8, Hoja M-140217, Inscripción 1ª. Cif: A-61/0325942*

# EXHIBIT F

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 9, 2009

VIA TELECOPIER +1 (310) 234 8975 + 1 (310) 234 0902 AND COURIER

Bob Yari Productions
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and
Head of Business Affairs*

Behzad Nahai
Nahai Law Group
10850 Wilshire Blvd, Suite 1100
Los Angeles, CA 90024
bnahai@nahailawgroup.com

Addicted Distribution, LLC ("Licensor")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal
and Business Affairs*

Syndicate Films International, LLC ("Agent")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal and
Business Affairs*

Re:    "Addicted" – Alliance Letter Agreement

Dear Ladies and Gentlemen:

Reference is made herein to: (i) the letter agreement dated October 27, 2006 (the "Letter Agreement") entered into between Bob Yari Productions ("BYP") and Motion Picture Distribution LP (now Alliance Films, Inc, "Alliance") with respect to the film entitled "Addicted" (the "Film"), pursuant to which BYP and certain of its affiliates assumed certain obligations for the benefit of Alliance; (ii) the license agreement dated October 25, 2006 relating to the Film between Alliance and Syndicate Films International, LLC on behalf of BYP-affiliate Addicted Distribution, LLC (the "License Agreement"); and (iii) the letter relating to the Film dated November 24, 2008 and sent by the undersigned on Alliance's behalf (the "Good Faith Negotiation Letter").

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT _____F_____

PAGE    49

Bob Yari Productions
Addicted Alliance Letter Agreement
January 9, 2008
Page 2 of 3

Pursuant to the terms of the Letter Agreement, Alliance and the Licensor had 30 business days
from commencement of good faith negotiations to agree upon a reduced Minimum Guarantee.
Such 30 business day period began on service of the Good Faith Negotiation Letter. Alliance
has provided BYP with a bona fide offer in writing, but in breach of the terms of the Letter
Agreement, the Licensor and Syndicate have failed even to engage in the negotiations on the
spurious grounds that principal photography did not complete until May 2007. The 30 business
day period ran out today, January 9, 2009.

Since Licensor and Alliance have failed to agree a Reduced Minimum Guarantee in such 30
business day period, Alliance is entitled under the terms of the Letter Agreement to require BYP
to accept an assignment of Alliance's rights in the Film and BYP is obligated to repay: (i) all
amounts paid by Alliance in respect of the Film including the Minimum Guarantee and interest
thereon at LIBOR plus 2%; and (ii) any Distribution Expenses previously incurred by Alliance
(as defined in the License Agreement) (collectively, (i) and (ii) are referred to as "Repayment
Amounts").

Alliance is hereby exercising that right and this letter is the "Put Notice"; accordingly Alliance
demands payment by BYP of the Repayment Amounts in consideration of the assignment.

As at today's date the Repayment Amounts total US$867,125 and CDN$12,341, consisting of
Minimum Guarantee payments of US$846,819, interest thereon of US$20,306 and Distribution
Expenses of CDN$12,341. The foregoing is due and payable by BYP within 30 days, i.e. no
later than February 11, 2009. Payment should be made in accordance with the invoice attached
to this letter.

If BYP elects to ignore its obligations under the Letter Agreement, Alliance will avail itself of
the appropriate judicial remedies for such breach. This letter is not intended as a full or complete
statement of Alliance's position with respect to the matters discussed herein, the Film, the
License Agreement, or the Letter Agreement and it should not be so construed.

Very truly yours,

Bruce E. Van Dalsem

cc:     Charles Layton (via e-mail);
        Xavier Marchand (via e-mail);
        Amy Paquette, Esq. (via e-mail);

2

EXHIBIT  F

PAGE  50

Bob Yari Productions
Addicted Alliance Letter Agreement
January 9, 2008
Page 3 of 3

       Spyro Markesinis, Esq. (via e-mail);
       Yonaton Rosenzweig, Esq. (via e-mail);
       Bob Yari (via e-mail);
       Elizabeth Bell, Esq. (via e-mail);
       Kendra Dousette, Esq. (via e-mail);
       Dennis Brown (via e-mail).

Enc:    Invoices

22016/2756295.1

3

EXHIBIT _F_

PAGE ___51___



**Alliance Films Inc.**
Attn: Accounts Receivable
455 St. Antoine Street West, Suite 300
Montreal, QC    H2Z 1J1

## Invoice **INV0001344**

GST Reg: 857359152 RT001

| Bill to: | Ship to: | | |
|---|---|---|---|
| BOB YARI PRODUCTIONS | | | |
| 10850 WILSHIRE BLVD., 6TH FLOOR | | | |
| LOS ANGELES, CA 90024 | | | |

| | |
|---|---|
| Invoice Date | January 09, 2009 |
| Customer Code: | BOBYARI |
| PO No. | |
| Contract No. | |
| Terms | DUE ON RECEIPT |
| Due Date | January 09, 2009 |
| Shipped Date | January 09, 2009 |

| Product # | Reference | Description | Qty Shipped | Unit Price | Discount | Item Total |
|---|---|---|---|---|---|---|
| | 104968 | Interest on Minimum Guarantee for ADDICTED | 1.00 | 20,306.00 | | US20,306.00 |
| | 104968 | Minimum Gurarantee for ADDICTED | 1.00 | 846,819.00 | | US846,819.00 |

Please remit payment to:
**Alliance Films Inc.**

Attn: Accounts Receivable
455 St. Antoine Street West, Suite 300
Montreal, QC    H2Z 1J1

Attention: Accounts Receivable

| | |
|---|---|
| Subtotal | 867,125.00 |
| Discount | 0.00 |
| Freight | 0.00 |
| VAT | 0.00 |
| Total | 867,125.00 |
| Paid | 0.00 |
| Amount Due | US867,125.00 |

OFFICE USE ONLY



EXHIBIT    Page Number    1



**Alliance Films Inc.**
Attn: Accounts Receivable
455 St. Antoine Street West, Suite 300
Montreal, QC    H2Z 1J1

**Invoice INV0001345**

GST Reg: 857359152 RT001

| Bill to: | Ship to: |
|---|---|
| BOB YARI PRODUCTIONS | |
| 10850 WILSHIRE BLVD., 6TH FLOOR | |
| LOS ANGELES, CA 90024 | |

| | |
|---|---|
| Invoice Date | January 09, 2009 |
| Customer Code: | BOBYARI |
| PO No. | |
| Contract No. | |
| Terms | DUE ON RECEIPT |
| Due Date | January 09, 2009 |
| Shipped Date | January 09, 2009 |

| Product # | Reference | Description | Qty Shipped | Unit Price | Discount | Item Total |
|---|---|---|---|---|---|---|
| | 104968 | Incurred Expenses for ADDICTED | 1.00 | 12,341.00 | | $12,341.00 |

Please remit payment to:
**Alliance Films Inc.**

Attn: Accounts Receivable
455 St. Antoine Street West, Suite 300
Montreal, QC    H2Z 1J1

Attention: Accounts Receivable

| | |
|---|---|
| Subtotal | 12,341.00 |
| Discount | 0.00 |
| Freight | 0.00 |
| Tax | 0.00 |
| **Total** | **12,341.00** |
| Paid | 0.00 |
| **Amount Due** | **$12,341.00** |

OFFICE USE ONLY

# EXHIBIT G

Bob Yari Productions
A California Corporation
("BYP")
10850 Wilshire Blvd. 6th Floor Los Angeles, CA 90024
(O) 310-234-8970 (F) 310-234-8975

December 14, 2006

Aurum Producciones S.A.
Avenida de Burgos 12, 10a
28036 Madrid
Spain

Tel: +34 917 684 800
Fax: +34 917 684 833

Re:     "The Accidental Husband" – *Letter Agreement*

Ladies and Gentlemen:

Reference is hereby made to that certain license agreement dated as of October 31, 2006 (the "Agreement") between Fintage Magyar Kft. ("Licensor") through its sales agent Syndicate Films International, LLC ("Sales Agent") and Aurum Producciones S.A. ("Distributor") pursuant to which Distributor was granted certain rights in and to that motion picture currently entitled "The Accidental Husband" (the "Picture"). As a material inducement for Distributor to enter into the Agreement, BYP hereby acknowledges that it is in its best interests to and is willing to enter into this Letter Agreement for the benefit of Distributor and agrees as follows:

For good and valuable consideration, the receipt and sufficiency of such is hereby acknowledged and accepted, the parties agree that:

A.

(I) If Sales Agent and/or Licensor fail to provide evidence satisfactory to Distributor (e.g. through EDI website) of a U.S. theatrical release commitment by a US distribution company (meaning Universal, Twentieth Century Fox, Sony Pictures Entertainment, Paramount Pictures, The Walt Disney Company, MGM, Warner Bros. New Line, Focus Features, Fox Searchlight, Screen Gems, Warner Independent Pictures ["Major Studios"] , or other US distribution company approved by Distributor in its sole discretion, but specifically excluding Sony Pictures Classics and Picture House), for the Picture on no less than 1000 screens on the earlier of (a) two (2) years from completion of principal photography of the Picture or (b) one (1) year after Delivery and;

(II) If Licensor and Distributor agree within thirty (30) business days from the commencement of good faith negotiations to reduce the Minimum Guarantee ("Reduced Accidental Guarantee") of the Picture:

EXHIBIT  G

PAGE  54

(a) BYP hereby agrees to refund the difference between the Minimum Guarantee and the Reduced Accidental Guarantee within thirty (30) business days of Distributor's request if Licensor fails to do so and;

(b) Licensor agrees that (i) to the extent that Distributor is unable to fully recoup the Reduced Accidental Guarantee, interest on the Reduced Accidental Guarantee at LIBOR+2% and Distribution Expenses from the Gross Receipts of the Picture, it shall be able to recoup such sums from the Gross Receipts generated from the exploitation of any picture acquired from Licensor (or any of its affiliates) in the Territory, but not deducted from the Reduced Accidental Guarantee payable in connection with such picture(s); (ii) the Term of the Rights granted for the Picture shall be extended to twenty-seven (27) years from Delivery; (iii) the Distribution Fee for the Picture shall increase to twenty-seven and one-half percent (27 ½ %); and (iv) to the extent that Distributor is unable to fully recoup the Reduced Accidental Guarantee, interest on the Reduced Accidental Guarantee at LIBOR+2% and Distribution Expenses from the Gross Receipts of the Picture, it shall be able to recoup such sums from the Gross Receipts generated from the exploitation of any picture acquired from Licensor and/or Sales Agent (or any of their affiliates) in the UK territories, but not deducted from the Minimum Guarantee(s) payable in connection with such picture(s).

B.      In the event that Licensor and Distributor fail to agree on a reduction of the Minimum Guarantee within thirty (30) business days from the commencement of negotiations, and the Licensor and/or Sales Agent fail to provide evidence of the theatrical commitment stated in (I) above, then unless Distributor has prior to sending the "Put Notice" (as hereafter defined) released the Picture in any media that generates Gross Receipts in the Territory (as both are defined in the Agreement) (hereafter referred to as the "Prior Release"), Distributor shall have the right to send a notice (herein the "Put Notice") to BYP wherein it notifies BYP that it is exercising its right to require BYP to accept an assignment of all Distributor's rights in and to the Picture and BYP shall be obligated to repay all amounts paid by Distributor and any Distribution Expenses (Distribution Expenses capped at US$500,000) previously incurred by Distributor (together with interest on the Minimum Guarantee (at LIBOR +2%)) within thirty (30) business days of Distributor's written request for repayment as consideration for such assignment.

C.      Pursuant to a letter signed by the Completion Guarantor (as defined below) dated as of December 7, 2006, the Completion Guarantor has (i) confirmed that the approved budget of the Picture is $20,395,000 ("Approved Budget") and that BYP has (or will) guarantee to fund an additional US$1,500,000 as the contingency for the Picture (the "BYP Guaranteed Contingency") making the Locked Budget of the Picture $21,895,000 and (ii) has agreed that prior to Notice of Delivery (as that term is defined in the Agreement) it shall provide Licensor and/or Distributor with a statement verifying the amount of the BYP Guaranteed Contingency actually spent in connection with the production of the Picture. If the Completion Guarantor's statement shows that, as of the completion of the Picture and delivery of the Picture to the US distributor, not all of the BYP Guaranteed Contingency has been spent, the Minimum Guarantee shall be recalculated based the Approved Budget plus the amount of the contingency used as verified by the Completion Guarantor's statement ("Recalculated Minimum Guarantee") and BYP hereby agrees to refund the difference between the Minimum Guarantee and the Recalculated Minimum Guarantee within thirty (30) business days of Distributor's request.

Distributor's rights pursuant to this Letter Agreement (if exercised) shall not relieve Distributor of its obligations under that certain Notice of Assignment dated October 31, 2006 by and among Distributor, Licensor, International Film Guarantors, LLC (the "Completion Guarantor") and The Governor and Company of the Bank of Ireland (the "Bank") entered into in connection with the Picture ("Notice") unless Distributor has received Bank Termination Notice.

EXHIBIT ___G___

PAGE ___55___

If Bank Termination Notice has not been received Distributor shall pay the Minimum Guarantee to the Bank and BYP hereby undertakes to refund the Minimum Guarantee or the difference between the Minimum Guarantee and the Reduced Accidental Guarantee (if applicable) and all amounts actually paid by Distributor to the Bank or the Completion Guarantor, as applicable, as required under the Notice, within thirty (30) business days of Distributor's request.

BYP agrees to provide Distributor with updated financial information regarding BYP within 12 months of the date hereof.

No amendment or modification of any of the provisions of this Letter Agreement, nor any waiver or consent with respect to any of Distributor's rights or BYP's obligations to Distributor under this Letter Agreement shall be effective unless such amendment, modification, or waiver is in writing and is signed by Distributor and BYP. This Letter Agreement may be executed in counterparts, each of which together shall constitute one and the same instrument. Delivery of an executed counterpart of this Letter Agreement by facsimile shall be equally effective as delivery of a manually executed counterpart. Any party delivering an executed counterpart by facsimile shall also deliver a manually executed counterpart of this Letter Agreement, but failure to do so shall not effect the validity, enforceability, or binding effect of this Letter Agreement, and the parties hereby waive any right they may have to object to said treatment.

Capitalized terms used herein, but not defined in this Letter Agreement shall have the meaning given to those terms in the Agreement or the Notice (as applicable).

This Letter Agreement will be governed by and construed in accordance with the laws of the State of California, without regard to its conflicts of laws principles. The parties agree to submit to the exclusive jurisdiction of the courts of the State of California.

Any notices to be served under this Letter Agreement shall be served in accordance with the procedures and shall be subject to the provisions set forth in paragraph 27 of Schedule A of the Agreement.

If the foregoing correctly reflects your understanding would you kindly sign the place provided below whereupon this letter will constitute a binding agreement between us.

Dated: December 14, 2006

**AGREED AND ACCEPTED:**
Bob Yari Productions
a California corporation

By:
Its:

**AGREED AND ACCEPTED:**
Aurum Producciones S.A.

By:
Its:

EXHIBIT ___G___

PAGE ___56___

# EXHIBIT H

Bob Yari Productions
A California Corporation
("BYP")
10850 Wilshire Blvd. 6th Floor Los Angeles, CA 90024
(O) 310-234-8970 (F) 310-234-8975

December 14, 2006

Motion Picture Distribution LP
121 Bloor Street East, Suite 1500
Toronto, Ontario
Canada
M4W 3M5

Tel: +(416) 967-1174
Fax: +(416) 960-0971

Re:     "The Accidental Husband" – *Letter Agreement*

Ladies and Gentlemen:

Reference is hereby made to that certain license agreement dated as of November 2, 2006 (the "Agreement") between Syndicate Films International, LLC ("Sales Agent") as sales agent for Accidental Husband Intermediary, Inc. ("Licensor") and Motion Picture Distribution, LP ("Distributor") pursuant to which Distributor was granted certain rights in and to that motion picture currently entitled "The Accidental Husband" (the "Picture"). As a material inducement for Distributor to enter into the Agreement, BYP hereby acknowledges that it is in its best interests to and is willing to enter into this Letter Agreement for the benefit of Distributor and agrees as follows:

For good and valuable consideration, the receipt and sufficiency of such is hereby acknowledged and accepted, the parties agree that:

A.

(I) Sales Agent and/or Licensor shall deliver written notice to Distributor confirming whether or not Licensor or Sales Agent has secured a U.S. theatrical release commitment by a U.S. distribution company (herein the "U.S. Theatrical Release Commitment") (including only Universal, Twentieth Century Fox, Sony Pictures Entertainment, Paramount Pictures, The Walt Disney Company, MGM, Warner Bros. New Line, Focus Features, Fox Searchlight, Screen Gems, Warner Independent Pictures ["Major Studios"] Yari Film Group Releasing, or other US distribution company, including any Major Studio's specialty distribution units or affiliates, approved by Distributor in its sole discretion, but specifically excluding Sony Pictures Classics and Picture House), for release of the Picture on no less than 1000 screens simultaneously in the U.S., but not necessarily in the initial release, and such written notice shall be provided at least six (6) months from the anticipated theatrical release of the Picture in the U.S. (the "Six (6) Month Notice"); and

EXHIBIT ___ H

PAGE ___ 57

(II) If the Six (6) Month Notice confirms that the U.S. Theatrical Release Commitment will not be satisfied and Licensor and Distributor agree within thirty (30) business days from the commencement of good faith negotiations to reduce the Minimum Guarantee ("Reduced Accidental Guarantee") of the Picture, BYP hereby agrees to refund the difference between the Minimum Guarantee and the Reduced Accidental Guarantee within thirty (30) days of Distributor's request.

(III) In the event that Licensor and Distributor fail to agree on a reduction of the Minimum Guarantee within thirty (30) business days from the commencement of negotiations where the Six (6) Month Notice confirms that U.S. Theatrical Release Commitment will not be satisfied, then unless Distributor has prior to sending the "Put Notice" (as hereafter defined) released the Picture in any media that generates Gross Receipts in the Territory (as both are defined in the Agreement) (hereafter referred to as the "Prior Release"), Distributor shall have the right to send a notice (herein the "Put Notice") to BYP wherein it notifies BYP that it is exercising its right to require BYP to accept an assignment of all Distributor's rights in and to the Picture and BYP shall be obligated to repay all amounts paid by Distributor (including the Minimum Guarantee and interest on the Minimum Guarantee (at LIBOR +2%)) and any Distribution Expenses within thirty (30) days from Distributor's written request for repayment as consideration for such assignment (except any Distribution Expenses incurred by Distributor prior to the date the Six (6) Month Notice was delivered, however such expenses may be recouped by Distributor in the event it does not exercise its right to terminate the Agreement pursuant to this Letter Agreement and proceeds pursuant to the terms of the Agreement).

B.

(I) If, after Licensor or Sales Agent delivers the Six (6) Month Notice to Distributor that confirms that the U.S. Theatrical Release Commitment will be satisfied but not later than three (3) months before the anticipated theatrical release in the U.S., Licensor and/or Sales Agent do then not anticipate that the U.S. theatrical release commitment will be satisfied, either Licensor or Sales Agent shall send written notice to Distributor of such event (the "Three (3) Month Notice"): and

(II) If, after Licensor or Sales Agent sends the Three (3) Month Notice, Licensor and Distributor agree within thirty (30) business days from the commencement of good faith negotiations to a Reduced Accidental Guarantee for the Picture, BYP hereby agrees to refund the difference between the Minimum Guarantee and the Reduced Accidental Guarantee within thirty (30) days of Distributor's request.

(III) In the event that Licensor or Sales Agent delivers the Three (3) Month Notice and Licensor and Distributor fail to agree on a reduction of the Minimum Guarantee within thirty (30) business days from the commencement of negotiations, then unless there has been a Prior Release of the Picture in advance of Distributor sending the Put Notice, Distributor shall have the right to send a Put Notice to BYP and BYP shall be obligated to repay all amounts paid by Distributor (including the Minimum Guarantee and interest on the Minimum Guarantee (at LIBOR +2%)) and any Distribution Expenses within thirty (30) days from Distributor's written request for repayment as consideration for such assignment (except any Distribution Expenses incurred by Distributor prior to the date the Six (6) Month Notice was delivered however such expenses may be recouped by Distributor in the event it

EXHIBIT ___, H

PAGE ___ 58

does not exercise its right to terminate the Agreement pursuant to this Letter Agreement and proceeds pursuant to the Agreement).

C. In the event that Licensor or Sales Agent delivers the Six (6) Month Notice that confirms that the U.S. Theatrical Release Commitment will be satisfied and does not thereafter deliver the Three (3) Month Notice, and if Licensor does not provide evidence of the U.S. Theatrical Release Commitment through EDI, within ten (10) weeks of the U.S. theatrical release, i.e. the Picture does not, in fact, get released by a Major Studio, Yari Film Group Releasing, or other distributor approved by Distributor in its sole discretion on at least 1000 screens simultaneously in the U.S., but not necessarily in the initial release, then BYP shall be obligated to repay the Minimum Guarantee and interest on the Minimum Guarantee (at LIBOR +2%)) within thirty (30) days from Distributor's written request for repayment and the Distribution Fee (as defined in the Agreement) shall decrease to twenty percent (20%) in all media.

It is acknowledged that Distributor has acquired, or will acquire, rights to the following pictures, which have the following Minimum Guarantees (the following pictures referred to herein collectively as the "Crossed Pictures"):
1) Haven – US$500,000
2) Gray Matters – US$250,000
3) Winter Passing – US$100,000
4) Find Me Guilty – US$550,000

In addition, Licensor agrees that to the extent that Distributor is unable to fully recoup the applicable Minimum Guarantees, interest on the Minimum Guarantees at LIBOR+2% and Distribution Expenses from the Gross Receipts derived from the Crossed Pictures it shall be able to recoup such sums from seventy five percent of one hundred percent (75% of 100%) of the Gross Receipts generated from the exploitation of the Picture up to an amount of six hundred thousand dollars ($600,000) (if not previously recouped from any other picture Distributor acquires from Licensor or Sales Agent [or any of their affiliates] in the Territory).

D. Pursuant to a letter signed by the Completion Guarantor (as defined below) dated as of December 7, 2006, the Completion Guarantor has (i) confirmed that the approved budget of the Picture is $20,395,000 ("Approved Budget") and that BYP has (or will) guarantee to fund an additional US$1,500,000 as the contingency for the Picture (the "BYP Guaranteed Contingency") making the Locked Budget of the Picture $21,895,000 and (ii) has agreed that prior to Delivery (as that term is defined in the Agreement) it shall provide Licensor and/or Distributor with a statement verifying the amount of the BYP Guaranteed Contingency actually spent in connection with the production of the Picture.    If the Completion Guarantor's statement shows that, as of the completion of the Picture and delivery of the Picture to the US distributor, not all of the BYP Guaranteed Contingency has been spent, the Minimum Guarantee shall be recalculated based on the Approved Budget plus the amount of the contingency used as verified by the Completion Guarantor's statement ("Recalculated Minimum Guarantee") and BYP hereby agrees to refund the difference between the Minimum Guarantee and the Recalculated Minimum Guarantee within thirty (30) business days of Distributor's request.

Distributor's rights pursuant to this Letter Agreement (if exercised) shall not relieve Distributor of its obligations under that certain Notice of Assignment dated November 2,

EXHIBIT ____ ³ $\text{H}$

PAGE ____ 59

2006 by and among Distributor, Licensor, International Film Guarantors, LLC (the "Completion Guarantor") and The Governor and Company of the Bank of Ireland, (the "Bank") entered into in connection with the Picture ("Notice") unless Distributor has received Bank Termination Notice. If Bank Termination Notice has not been received Distributor shall pay the Minimum Guarantee to the Bank and BYP hereby undertakes to refund the Minimum Guarantee or the difference between the Minimum Guarantee and the Reduced Accidental Guarantee (if applicable) and all amounts actually paid by Distributor to the Bank or the Completion Guarantor, as applicable, as required under the Notice, within thirty (30) days of Distributor's request.

BYP agrees to provide Distributor with updated financial information regarding BYP within 12 months of the date hereof.

No amendment or modification of any of the provisions of this Letter Agreement, nor any waiver or consent with respect to any of Distributor's rights or BYP's obligations to Distributor under this Letter Agreement shall be effective unless such amendment, modification, or waiver is in writing and is signed by Distributor and BYP. This Letter Agreement may be executed in counterparts, each of which together shall constitute one and the same instrument. Delivery of an executed counterpart of this Letter Agreement by facsimile shall be equally effective as delivery of a manually executed counterpart. Any party delivering an executed counterpart by facsimile shall also deliver a manually executed counterpart of this Letter Agreement, but failure to do so shall not effect the validity, enforceability, or binding effect of this Letter Agreement, and the parties hereby waive any right they may have to object to said treatment.

Capitalized terms used herein, but not defined in this Letter Agreement shall have the meaning given to those terms in the Agreement or the Notice (as applicable).

This Letter Agreement will be governed by and construed in accordance with the laws of the State of California, without regard to its conflicts of laws principles. The parties agree to submit to the exclusive jurisdiction of the courts of the State of California.

Any notices to be served under this Letter Agreement shall be served in accordance with the procedures and shall be subject to the provisions set forth in paragraph 27 of Schedule A of the Agreement.

If the foregoing correctly reflects your understanding would you kindly sign the place provided below whereupon this letter will constitute a binding agreement between us.

Dated: December 14, 2006

AGREED AND ACCEPTED:
Bob Yari Productions
a California corporation

By:
Its: CEO

AGREED AND ACCEPTED:
Motion Picture Distribution LP
By its sole general partner Motion Picture
Distribution Inc.

By:
Its:

EXHIBIT ___ H
PAGE ___ 60

# EXHIBIT I



January 9, 2009

<u>VIA FEDEX, TELECOPIER +1 (310) 234 8975 + 1 (310) 234 0902 AND EMAIL</u>

Bob Yari Productions                              Accidental Husband Intermediary, Inc.
10850 Wilshire Blvd., 6th Floor                  10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024                            Los Angeles, CA 90024

*Attn: Managing Director and*                     *Attn: Managing Director and*
*Head of Business Affairs*                         *Head of Business Affairs*

Re:    "Accidental Husband" - Aurum Agreements

Dear Ladies and Gentlemen:

Reference is made to: (i) the letter agreement dated December 14, 2006 (the "Letter
Agreement") with respect to the film "Accidental Husband" (the "Film") entered into between
Aurum Producciones S.A. ("Aurum") and Bob Yari Productions ("BYP") and (ii) the distribution
agreement dated October 31, 2006 (the "License Agreement") entered into by Aurum and the
licensee of Accidental Husband Intermediary, Inc. ("AH, Inc."). Under the License and Letter
Agreements, there are goods deliverable to Aurum which would allow Aurum to exhibit the Film
in its territory; both AH, Inc. and BYP were required to ensure theatrical release of the Film in
the United States.

Pursuant to California law, Aurum formally demands adequate assurances of performance from
BYP and from AH, Inc.. (*See* California Commercial Code ("CCC") § 2609, Restatement
(Second) Contracts § 251.)

EXHIBIT  I

PAGE  61

Bob Yari Productions; Accidental Husband Intermediary, Inc
Accidental Husband Aurum Agreements
January 9, 2009
Page 2 of 4

**Demand for Adequate Assurances of Performance from BYP**

The Letter Agreement places the following express condition on BYP:

> If Licensor and/or Sales Agent fail to provide satisfactory evidence
> to Distributor (e.g. through EDI website) of a U.S. theatrical
> release commitment by a US distribution company (meaning
> Universal, Twentieth Century Fox, Sony Pictures Entertainment,
> Paramount Pictures, The Walt Disney Company, MGM, Warner
> Bros. New Line, Focus Features, Fox Searchlight, Screen Gems,
> Warner Independent Pictures ("Major Studios") or other US
> distribution company approved by Distributor in its sole discretion
> . . . for the Picture on no less than 1000 screens . . . then . . . BYP
> shall be obligated to repay all amounts paid by Distributor and any
> Distribution Expenses previously incurred by Distributor within
> thirty (30) business days of Distributor's written request for
> repayment as consideration for ["putting" rights to BYP].

(Letter Agreement at 2.) Under this agreement, BYP is clearly required to ensure wide theatrical
release the Film.

Aurum has reasonable grounds for insecurity regarding BYP's non-performance of this theatrical
release commitment because, *inter alia*, your sales agent, Syndicate Films International, LLC,
has repeatedly delayed the scheduled release, including in two formal legal letters, the first of
which stated that the U.S. theatrical release would take place in March 2008, which it did not, the
second of which stated that the U.S. theatrical release would take place on August 2008, which it
did not. No further written notice has been provided. Furthermore, your affiliates have
previously stated in each correspondence that Yari Film Group Releasing would be the entity
releasing the Film. However, on December 18, 2008, a spokesperson for that entity sent a
release to Aurum stating that it has "ceased operations" and will not be distributing films. In
addition, the Film has been removed from all reporting systems as a scheduled release.
Previously, BYP and its affiliates had relied on its appearance on such systems as evidence that
the theatrical release commitment would be met via a wide screen release. The removal destroys
the sole piece of evidence previously put forward by BYP or its affiliates that the commitment
would be met and thus amplifies Aurum's grounds for insecurity.

As such, you must confirm that the Film will be released theatrically by providing evidence in
the form of concrete third party evidence such as signed contractual excerpts which include the
information required pursuant to the Letter Agreement, i.e. the date of the theatrical release, the
number of screens, and the releasing entity for the Film. Failure to provide such adequate
assurances of performance by January 30, 2009 will constitute a binding legal repudiation of
your obligation to release the Film theatrically in the U.S. under the Letter Agreement. (*See*
CCC § 2609(d); Restatement (Second) Contracts § 251(b).)

2

EXHIBIT I

PAGE 62

Bob Yari Productions; Accidental Husband Intermediary, Inc
Accidental Husband Aurum Agreements
January 9, 2009
Page 3 of 4

**Demand for Adequate Assurances of Performance from Accidental Husband Intermediary**

The License Agreement places the following express condition related to U.S. distribution on the licensee of AH, Inc., which licensee relies upon AH, Inc. for U.S. distribution matters:

> This Agreement is conditioned on Licensor providing evidence
> (e.g. through EDI website) to Distributor [i.e. Aurum] of a U.S.
> theatrical release.

(License Agreement, ¶ 5.) Based on the contract and our records of your production, this U.S. theatrical release must occur within the coming weeks.

Aurum has reasonable grounds for insecurity regarding AH, Inc.'s non-performance of this U.S. theatrical release commitment because, *inter alia*, Syndicate has repeatedly delayed the scheduled release, including in two formal legal letters, the first of which stated that the U.S. theatrical release would take place in March 2008, which it did not, the second of which stated that the U.S. theatrical release would take place on August 2008, which it did not. No further written notice has been provided. Furthermore, your affiliates have previously stated in each correspondence that Yari Film Group Releasing would be the entity releasing the Film. However, on December 18, 2008, a spokesperson for that entity sent a release to Aurum stating that it has "ceased operations" and will not be distributing films. In addition, the Film has been removed from all reporting systems as a scheduled release. Previously, AH, Inc. and its affiliates had relied on its appearance on such systems as evidence that the theatrical release commitment would be met via a wide screen release. The removal destroys the sole piece of evidence previously put forward by AH, Inc. or its affiliates that the commitment would be met and thus amplifies Aurum's grounds for insecurity.

As such, you must confirm that the Film will be released theatrically by providing evidence in the form of concrete third party evidence such as signed contractual excerpts which include the information required pursuant to the License Agreement, i.e. the date of the theatrical release, the number of screens, and the releasing entity for the Film. <u>Failure to provide such adequate assurances of performance by January 30, 2009 will constitute a binding legal repudiation of your obligation to release the Film theatrically in the U.S. under the License Agreement.</u> (*See* CCC § 2609(d); Restatement (Second) Contracts § 251(b).)

This letter is not intended as a full statement of the facts or law as they relate to this matter and it should not be so construed. If you have any questions, feel free to direct them to our California litigation counsel, who are copied below.

3

EXHIBIT    I

PAGE    63

Bob Yari Productions; Accidental Husband Intermediary, Inc
Accidental Husband Aurum Agreements
January 9, 2009
Page 4 of 4

Very truly yours,

Spyro Markesinis, Esq.
**FOR AND ON BEHALF OF AURUM PRODUCCIONES S.A.**

cc:     Charles Layton (via e-mail)              Bob Yari (via e-mail)
        Xavier Marchand (via e-mail)             Elizabeth Bell, Esq. (via e-mail)
        Amy Paquette, Esq. (via e-mail)          Kendra Dousette (via e-mail)
        Bruce Van Dalsem, Esq. (via e-mail)      Dennis Brown (via e-mail)

Enc:

4

EXHIBIT  I
PAGE   64

# EXHIBIT J



January 9, 2009

<u>VIA FEDEX AND EMAIL</u>

Bob Yari Productions                           Accidental Husband Intermediary, Inc.
10850 Wilshire Blvd., 6th Floor                10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024                          Los Angeles, CA 90024

*Attn: Managing Director and*                  *Attn: Managing Director and*
*Head of Business Affairs*                      *Head of Business Affairs*


Re:    "Accidental Husband" - Alliance Agreements

Dear Ladies and Gentlemen:

Reference is made to: (i) the letter agreement dated December 14, 2006 (the "Letter Agreement") with respect to the film "Accidental Husband" (the "Film") entered into between Alliance Films Inc. ("Alliance") and Bob Yari Productions ("BYP") and (ii) the distribution agreement dated November 2, 2006 (the "License Agreement") entered into by Alliance and Accidental Husband Intermediary, Inc. ("AH, Inc."), through its sales agent. Under the License and Letter Agreements, AH, Inc. was required to deliver certain goods to Alliance which would allow Alliance to exhibit the Film in its territory; both AH, Inc. and BYP were required to ensure theatrical release of the Film in the United States.

Pursuant to California law, Alliance formally demands adequate assurances of performance from BYP under the Letter Agreement and from AH, Inc. under the License Agreement. (*See* California Commercial Code ("CCC") § 2609, Restatement (Second) Contracts § 251.)

ALLIANCE FILMS INC.

145 King Street East · 3ʳᵈ Floor · Toronto · Ontario · Canada · M5C 2Y7 · Tel 416.309.4200 · Fax 416.309.4290
455 Rue St-Antoine Ouest · Bureau 300 · Montréal · Quebec · H2Z 1J1 · Tel 514.878.2282 · Fax 514.878.2419
www.alliancefilms.com

EXHIBIT ___J___

PAGE ___65___

Bob Yari Productions; Accidental Husband Intermediary, Inc
Accidental Husband Agreements
January 9, 2009
Page 2 of 4

### Demand for Adequate Assurances of Performance from BYP

The Letter Agreement provides for the following requirements of BYP and its affiliates:

> Sales Agent and/or [AH, Inc.] shall deliver written notice to
> Distributor confirming whether or not Licensor or Sales Agent has
> secured a U.S. theatrical release commitment by a U.S. distribution
> company (including only Universal, Twentieth Century Fox, Sony
> Pictures Entertainment, Paramount Pictures, The Walt Disney
> Company, MGM, Warner Bros. New Line, Focus Features, Fox
> Searchlight, Screen Gems, Warner Independent Pictures ("Major
> Studios") Yari Film Group Releasing or other US distribution
> company . . . approved by Distributor in its sole discretion . . . for
> release of the Picture on no less than 1000 screens simultaneously
> in the U.S., but not necessarily in the initial release, and such
> written notice shall be provided at least six (6) months from the
> anticipated theatrical release of the Picture in the U.S.

(Letter Agreement at 2.) Under this agreement, BYP is clearly required to ensure wide theatrical
release of the Film.

Alliance has reasonable grounds for insecurity regarding BYP's non-performance of this
theatrical release commitment because, *inter alia*, your sales agent, Syndicate Films
International, LLC, has repeatedly delayed the scheduled release, including in two formal legal
letters, the first of which stated that the U.S. theatrical release would take place in March 2008,
which it did not, the second of which stated that the U.S. theatrical release would take place on
August 2008, which it did not. No further written notice has been provided. Furthermore, your
affiliates have previously stated in each correspondence that Yari Film Group Releasing would
be the entity releasing the Film. However, on December 18, 2008, a spokesperson for that entity
sent a release to Alliance stating that it has "ceased operations" and will not be distributing films.
In addition, the Film has been removed from all reporting systems as a scheduled release.
Previously, BYP and its affiliates had relied on its appearance on such systems as evidence that
the theatrical release commitment would be met via a wide screen release. The removal destroys
the sole piece of evidence previously put forward by BYP or its affiliates that the commitment
would be met and thus amplifies Alliance's grounds for insecurity.

As such, you must confirm that the Film will be released theatrically by providing evidence in
the form of concrete third party evidence such as signed contractual excerpts which include the
information required pursuant to the Letter Agreement, i.e. the date of the theatrical release, the
number of screens, and the releasing entity for the Film. Failure to provide such adequate
assurances of performance by January 30, 2009 will constitute a binding legal repudiation of
your obligation to release the Film theatrically in the U.S. under the Letter Agreement. (*See*
CCC § 2609(d); Restatement (Second) Contracts § 251(b).)

2

EXHIBIT ____J____

PAGE ____Ulp____

Bob Yari Productions; Accidental Husband Intermediary, Inc
Accidental Husband Agreements
January 9, 2009
Page 3 of 4

**Demand for Adequate Assurances of Performance from Accidental Husband Intermediary**

The License Agreement places the following express condition on AH, Inc.:

> This Agreement is conditioned on Licensor providing notice to
> Distributor of a U.S theatrical release at least (6) months prior to
> Distributor's theatrical release.

(License Agreement, ¶ 5.) We have received no such notice, other than "notices" which project
release dates which never occurred.

Alliance has reasonable grounds for insecurity regarding AH, Inc.'s non-performance of this
theatrical release commitment because, *inter alia*, your sales agent Syndicate has repeatedly
delayed the scheduled release, including in two formal legal letters, the first of which stated that
the U.S. theatrical release would take place in March 2008, which it did not, the second of which
stated that the U.S. theatrical release would take place on August 2008, which it did not. No
further written notice has been provided. Furthermore, you and your affiliates have previously
stated in each correspondence that Yari Film Group Releasing would be the entity releasing the
Film. However, on December 18, 2008, a spokesperson for that entity sent a release to Alliance
stating that it has "ceased operations" and will not be distributing films. In addition, the Film has
been removed from all reporting systems as a scheduled release. Previously, AH, Inc. had relied
on its appearance on such systems as evidence that the theatrical release commitment would be
met via a wide screen release. The removal destroys the sole piece of evidence previously put
forward by AH, Inc. or its affiliates that the commitment would be met and thus amplifies
Alliance's grounds for insecurity.

As such, you must confirm that the Film will be released theatrically by providing evidence in
the form of concrete third party evidence such as signed contractual excerpts which include the
information required pursuant to the License Agreement, i.e. the date of the theatrical release, the
number of screens, and the releasing entity for the Film. Failure to provide such adequate
assurances of performance by January 30, 2009 will constitute a binding legal repudiation of
your obligation to release the Film theatrically in the U.S. under the License Agreement. (*See*
CCC § 2609(d); Restatement (Second) Contracts § 251(b).)

By demanding performance, Alliance does not thereby admit that BYP and AH, Inc. are free
from present default. This letter should not be construed to mean that Alliance does not regard
BYP and/or AH, Inc. as being in present actual breach of the Letter Agreement and License
Agreement. This letter is not intended as a full statement of the facts or law as they relate to this
matter and it should not be so construed. If you have any questions, feel free to direct them to
our California litigation counsel, who are copied below.

3

EXHIBIT _____ J

PAGE _____ 67

Bob Yari Productions; Accidental Husband Intermediary, Inc
Accidental Husband Agreements
January 9, 2009
Page 4 of 4

Very truly yours,

Amy Paquette, Esq.

cc:   Charles Layton (via e-mail)          Bob Yari (via e-mail)
      Xavier Marchand (via e-mail)         Elizabeth Bell, Esq. (via e-mail)
      Spyro Markesinis, Esq. (via e-mail)  Kendra Dousette, Esq. (via e-mail)
      Bruce Van Dalsem, Esq. (via e-mail)  Dennis Brown (via e-mail)

22016/2755261.1

4

# EXHIBIT K

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 23, 2009

**VIA PERSONAL SERVICE, FACSIMILE (310) 234-8975 (310) 234-0902 AND E-MAIL**

Bob Yari Productions
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024

*Attn: Managing Director and*
*Head of Business Affairs*

Behzad Nahai
Mark Wendorff
Nahai Law Group
10850 Wilshire Blvd, Suite 1100
Los Angeles, CA 90024
bnahai@nahailawgroup.com

Accidental Husband Intermediary, Inc. ("Licensor")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal and*
*Business Affairs*

Syndicate Films International, LLC ("Agent")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal and*
*Business Affairs*

Re:    "Accidental Husband" - Aurum Put Notice

Dear Ladies and Gentlemen:

Reference is made to: (i) the letter agreement dated December 14, 2006 (the "Letter Agreement") with respect to the film "Accidental Husband" (the "Film" or "Husband") entered into between Aurum Producciones S.A. ("Aurum") and Bob Yari Productions ("BYP"); (ii) the distribution agreement dated October 31, 2006 (the "License Agreement") entered into by Aurum and Accidental Husband Intermediary, Inc., through its licensee; and (iii) the January 9, 2009 letter from Spyro Markesinis, on behalf of Aurum, to BYP wherein Mr. Markesinis demanded adequate assurances of performance under the License and Letter Agreements ("January 9 Letter").

EXHIBIT  **K**

**quinn emanuel urquhart oliver & hedges, llp**

**69**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

Bob Yari Productions
Aurum Husband Put Notice
February 23, 2009
Page 2 of 3

The January 9 Letter requested that BYP affirm performance of certain of BYP's material obligations under the Letter Agreement. Namely, Aurum requested confirmation by January 30, 2009 that BYP would secure release of the Film in the United States on no fewer than 1000 screens by the date set in the Letter Agreement.

BYP did not respond to the request for assurances of performance.

For that reason, and for the reasons stated in the January 9 Letter, BYP has repudiated its obligations under the Letter Agreement, including the obligation to effect U.S. distribution of the Film and to negotiate a Reduce Minimum Guarantee in good faith. As such, Aurum is entitled under the terms of the Letter Agreement to require BYP to accept an assignment of Aurum's rights in Husband and BYP is obligated to repay: (i) all amounts paid by Aurum in respect of the Film including the Minimum Guarantee and interest thereon at LIBOR plus 2%; and (ii) any Distribution Expenses previously incurred by Aurum (as defined in the License Agreement and capped at $500,000) (collectively, (i) and (ii) are referred to as "Repayment Amounts").

Aurum is hereby exercising that right and this letter shall constitute the Put Notice under the Letter Agreement; accordingly Aurum demands payment by BYP of the Repayment Amounts and all amounts due by Aurum under the License Agreement, in consideration of the assignment.

As at today's date the Repayment Amounts total US$1,367,353 and €37,308, consisting of Minimum Guarantee payments of US$1,340,816, interest thereon of US$26,537 and Distribution Expenses of €37,308. Payment should be made in accordance with the invoice to follow this letter. In addition, please direct payment of the final US$70,569 of the Minimum Guarantee to the Bank of Ireland (the "Bank"), in accordance with the terms and conditions of that certain Notice of Assignment dated October 31, 2006 by and among Aurum, the Bank, and others (the "NOA") and indicating such payment is being made on behalf of and in discharge of any obligations of Distributor under the NOA. Upon receipt of the Repayment Amounts and confirmation that BYP has paid such final installment to the Bank, Aurum will execute an assignment in accordance with the Letter Agreement.

Given that BYP has repudiated its central material obligation under the Letter Agreement to secure U.S. distribution for the Film and has not sought to relieve Aurum's reasonable insecurity or negotiate in good faith, BYP has also repudiated its obligation to repay these Repayment Amounts as well. If BYP confirms in writing by March 1, 2009 that BYP will pay the Repayment Amounts within 30 business days, as otherwise contemplated by the Letter Agreement, Aurum will consider this particular repudiation retracted.

This letter is not intended as a full or complete statement of Aurum's position with respect to the matters discussed herein, the Film, the License Agreement, or the Letter Agreement and it should not be so construed.

2

EXHIBIT __K__

PAGE __70__

Bob Yari Productions
Aurum Husband Put Notice
February 23, 2009
Page 3 of 3

Very truly yours,

*Bruce Van Dalsem*

Bruce Van Dalsem, Esq.

cc:      Charles Layton (via e-mail)              Bob Yari (via e-mail)
         Xavier Marchand (via e-mail).            Elizabeth Bell, Esq. (via e-mail)
         Amy Paquette, Esq. (via e-mail)          Dennis Brown (via e-mail)

22016/2792722.3

3

EXHIBIT __K__

PAGE __71__

# EXHIBIT L

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 23, 2009

**VIA PERSONAL SERVICE, FACSIMILE (310) 234-8975 (310) 234-0902 AND E-MAIL**

Bob Yari Productions
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024

*Attn: Managing Director and*
*Head of Business Affairs*

Behzad Nahai
Mark Wendorff
Nahai Law Group
10850 Wilshire Blvd, Suite 1100
Los Angeles, CA 90024
bnahai@nahailawgroup.com

Accidental Husband Intermediary, Inc. ("Licensor")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal and*
*Business Affairs*

Syndicate Films International, LLC ("Agent")
10850 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024
*Attn: Managing Director and Head of Legal and*
*Business Affairs*

Re:    "Accidental Husband" - Alliance Films Put Notice

Dear Ladies and Gentlemen:

Reference is made to: (i) the letter agreement dated December 14, 2006 (the "Letter Agreement") with respect to the film "Accidental Husband" (the "Film" or "Husband") entered into between Alliance Films, Inc. ("Alliance Films") and Bob Yari Productions ("BYP"); (ii) the distribution agreement dated November 2, 2006 (the "License Agreement") entered into by Alliance Films and Accidental Husband Intermediary, Inc.; and (iii) the January 9, 2009 letter from Amy Paquette, on behalf of Alliance Films, to BYP, wherein Ms. Paquette demanded adequate assurances of performance under the License and Letter Agreements ("January 9 Letter").

EXHIBIT ___L___

PAGE ___72___

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

Bob Yari Productions
Alliance Films Husband Put Notice
February 23, 2009
Page 2 of 3

The January 9 Letter requested that BYP affirm the performance of certain of BYP's material obligations under the Letter Agreement. Namely, Alliance Films requested confirmation by January 30, 2009 that BYP would secure release of the Film in the United States on no fewer than 1000 screens.

BYP did not respond to the request for assurances of performance.

For that reason, and for the reasons stated in the January 9 Letter, BYP has repudiated its obligations under the Letter Agreement, including the obligation to effect U.S. distribution of the Film and to negotiate a Reduce Minimum Guarantee in good faith. As such, Alliance Films is entitled under the terms of the Letter Agreement to require BYP to accept an assignment of Alliance Films' rights in Husband and BYP is obligated to repay: (i) all amounts paid by Alliance Films in respect of the Film including the Minimum Guarantee and interest thereon at LIBOR plus 2%; and (ii) any Distribution Expenses previously incurred by Alliance Films (as defined in the License Agreement and capped at $500,000) (collectively, (i) and (ii) are referred to as "Repayment Amounts").

Alliance Films is hereby exercising that right and this letter shall constitute the Put Notice under the Letter Agreement; accordingly Alliance Films demands payment by BYP of the Repayment Amounts.

As at today's date the Repayment Amounts total US$1,448,786 and CND$39,513 consisting of Minimum Guarantee payments of US$1,411,385, interest thereon of US$37,401 and Distribution Expenses of CND$39,513. Payment should be made in accordance with the invoice to follow this letter. Upon receipt of the Repayment Amounts and confirmation that BYP has paid such final installment to the Bank, Alliance Films will execute a re-assignment in accordance with the Letter Agreement.

Given that BYP has repudiated its central material obligation under the Letter Agreement to secure U.S. distribution for the Film and has not sought to relieve Alliance Films' reasonable insecurity or to negotiate in good faith, BYP has also repudiated its obligation to repay these Repayment Amounts as well. If BYP confirms in writing by March 2, 2009 that BYP will pay the Repayment Amounts within 30 calendar days, as otherwise contemplated by the Letter Agreement, Alliance Films will consider this particular repudiation retracted.

This letter is not intended as a full or complete statement of Alliance Films' position with respect to the matters discussed herein, the Film, the License Agreement, or the Letter Agreement and it should not be so construed.

2

EXHIBIT ___L___

PAGE ___73___

Bob Yari Productions
Alliance Films Husband Put Notice
February 23, 2009
Page 3 of 3

Very truly yours,

*Bruce Van Dalsem*

Bruce Van Dalsem, Esq.


cc:  Charles Layton (via e-mail)          Bob Yari (via e-mail)
     Xavier Marchand (via e-mail)         Elizabeth Bell, Esq. (via e-mail)
     Amy Paquette, Esq. (via e-mail)      Dennis Brown (via e-mail)
     Bruce Van Dalsem, Esq. (via e-mail)


22016/2792883.2

3

EXHIBIT __L__

PAGE __74__

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV09- 1618 MMM (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
   **312 N. Spring St., Rm. G-8**
   **Los Angeles, CA 90012**

[ ] **Southern Division**
   **411 West Fourth St., Rm. 1-053**
   **Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
   **3470 Twelfth St., Rm. 134**
   **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Quinn Emanuel Urquhart Oliver Hedges
Bruce E. Van Dalsem (SBN 124128)
Yonaton M. Rosenzweig (SBN 248137)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| Alliance Atlantis Releasing Limited, an England and Wales corporation, dba Momentum Pictures, Aurum Producciones S.A., a Spain corporation and Alliance Films, Inc., a Canada corporation<br><br>PLAINTIFF(S)<br><br>v.<br><br>BOB YARI PRODUCTIONS, a California corporation; and DOES 1-10<br><br>DEFENDANT(S). | CV09-1618 MMM AJWx<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): <u>Bob Yari Productions</u>

A lawsuit has been filed against you.

Within <u>20</u>      days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Bruce E. Van Dalsem</u>      , whose address is <u>QEUO&H, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017</u>      . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

MAR - 9 2009

Dated: _____

**NATALIE LONGORIA**

By: _____

Deputy Clerk

1198

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (12/07)                    **SUMMONS**

CCD-1A

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

COURTESY COPY

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Alliance Atlantis Releasing Limited, an England and Wales corporation, dba Momentum Pictures, Aurum Producciones S.A., a Spain corporation, and Alliance Films Inc., a Canada corporation

**DEFENDANTS**
Bob Yari Productions, a California corporation; and DOES 1-10

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☑ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** 5,700,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332; 28 U.S.C. 2201(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☑ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____ **CV09-1618**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): CV08-05526 GW (SSx)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☑ A.  Arise from the same or closely related transactions, happenings, or events; or

      ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

      ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

      ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Alliance Atlantis (Momentum Pictures): England and Wales<br>Aurum Producciones S.A.: Spain<br>Alliance Films Inc.: Canada |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Bob Yari Productions: Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Jonathan Pmoreines_     Date March 9, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |